# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**ALIREZA BAKHTIARI**
*PLAINTIFF*

)
)
)
)
**V.**                                    )   CAUSE NO.: 3:18-CV-38
)
**JASON MADRIGAL**                        )   **JURY TRIAL**
*SERVE AT:*                               )   **DEMANDED**
ICE REGIONAL OFFICE                       )
170 PIKE COUNTY BLVD,                     )
LORDS VALLEY, PA 18428                    )
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*   )
)
**PAUL POSLUZNY**                         )
*SERVE AT:*                               )
ICE REGIONAL OFFICE                       )
170 PIKE COUNTY BLVD,                     )
LORDS VALLEY, PA 18428                    )
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*   )
)
**JENNIFER RITCHEY**                      )
*SERVE AT:*                               )
DETENTION AND REMOVAL OP'S                )
114 NORTH 8TH STREET,                     )
PHILADELPHIA, PA 19107-2422              )
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*   )
)
**THOMAS R. DECKER**                      )
*SERVE AT:*                               )
DETENTION AND REMOVAL OP'S                )
114 NORTH 8TH STREET,                     )
PHILADELPHIA, PA 19107-2422              )
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*   )
)
**FREDERICK J. KENT**                     )
*SERVE AT:*                               )
DETENTION AND REMOVAL OP'S                )
114 NORTH 8TH STREET,                     )
PHILADELPHIA, PA 19107-2422              )
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*   )
)
)
)
)
)
)

FILED
HARRISBURG, PA

JAN 0 5 2018

Per _____
Deputy Clerk

**JOHN F. KELLY, DHS SECRETARY**
*SERVE AT:*
MAIL STOP 0485
245 MURRAY LANE S.W.
WASHINGTON, DC 20528-0485
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*

**JOHN FRAWLEY (CORR. SERGEANT)**
*SERVE AT:*
PIKE COUNTY CORR. FACILITY
175 PIKE COUNTY BLVD,
LORDS VALLEY, PA 18428
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*

**FORSHE (CORR. SERGEANT)**
*SERVE AT:*
PIKE COUNTY CORR. FACILITY
175 PIKE COUNTY BLVD,
LORDS VALLEY, PA 18428
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*

**MARTIN (CORR. SERGEANT)**
*SERVE AT:*
PIKE COUNTY CORR. FACILITY
175 PIKE COUNTY BLVD,
LORDS VALLEY, PA 18428
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*

**ELISE WENZEL (CORR. ADMINISTRATOR)**
*SERVE AT:*
PIKE COUNTY CORR. FACILITY
175 PIKE COUNTY BLVD,
LORDS VALLEY, PA 18428
*DEFENDANT IN INDIVIDUAL CAPACITY ONLY*

**UNITED STATES OF AMERICA**
*SERVE AT:*
CIVIL LITIGATION UNIT
US DEPARTMENT OF JUSTICE
WASHINGTON, D.C.
*DEFENDANT IN CORPORATE AND*
*GOVERNMENTAL CAPACITIES*

CAUSE NO.:_____

**JURY TRIAL**
**DEMANDED**

## COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION (NATURE OF THE SUIT) ................................................................. 1

JURISDICTION AND VENUE ..................................................................................... 2

STATUTE OF LIMITATIONS ...................................................................................... 2

PARTIES TO THE SUIT ............................................................................................... 2

EXHAUSTION-PLRA ................................................................................................... 4

EXHAUSTION –FTCA .................................................................................................. 4

EXHAUSTION "8 C.F.R. 241.13" .............................................................................. 5

CLEARLY ESTABLISHED RIGHTS ........................................................................... 6

FACTS COMMON TO ALL COUNTS ......................................................................... 6

-Deferral of removal under CAT .................................................................. 6

-Seeking a Third Country of Removal ........................................................ 8

-Plaintiff's Interactions with Agents Madrigal and Posluzny .................. 9

-Clearly established rights which are beyond judicial debate: "Zadvydas v. Davis" and its progeny ................................................................................ 11

-Clearly established right which is beyond judicial debate: The courts can punish crime, ICE agents cannot! ............................................................... 12

-Prior notices and attempts to exhaust remedy all went ignored ........... 13

-Intentional Exposure to Disease (Hepatitis-C) by the ICE contractors – Defendants Frawley, Forshe and Martin ................................................... 13

-Retaliatory confinement to solitary isolation after plaintiff refused to keep quiet about the mass Hepatitis-C exposure of the detainees ............. 16

-Attempted Rape and Murder by Defendant's Frawley ........................... 17

-Sergeant Martin: Theft of evidence, fabrication of a suicide note and sexual abuse .. 19

-Delivering notices, letters and memoranda to those with custody over plaintiff ........ 20

-Hunger Strike and subsequent transfer out of PCCF ............................. 21

STATE OF MIND ALLEGATIONS .............................................................................. 24

INJURIES ....................................................................................................................... 24

COUNTS OF CLAIM .................................................................................................... 24

DAMAGES (JURY TRIAL REQUESTED) ................................................................. 41

VERIFICATION ............................................................................................................. 42

SIGNATURE SHEET ..................................................................................................... 42

INDEX OF APPENDICES IN ENCLOSURE: .............................................................. 43

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ALIREZA BAKHTIARI  )
*PLAINTIFF*  )  CAUSE NO.: 3:18-CV-38
  )
V.  )  **JURY TRIAL**
  )  **DEMANDED**
MADRIGAL et. al.  )
*DEFENDANTS*  )
  )

FILED
HARRISBURG, PA

JAN 0 5 2018

Per_____
Deputy Clerk

## COMPLAINT

Comes now, Alireza Bakhtiari ("Bakhtiari", "plaintiff"), in pro se, and respectfully states his complaint as follows:

THE FOREGOING IS NOT A FOILING BY A PERSON IN CUSTODY

### INTRODUCTION (NATURE OF THE SUIT)

1. The law enforcement officers, ICE[1] agents included, have no authority to dispense punishment for crimes committed by aliens, let alone to do so arbitrarily and capriciously. But in plaintiff's case, the defendants -- ICE staff -- have taken it upon themselves to mete out punishments for plaintiff's prior criminal conviction [attempt to hinder an official proceedings, dating back in 2012]. A conviction for which he served a sentence of 51 months in federal custody, and for which he was placed in removal proceedings. A conviction for which an Immigration Judge granted him protection under United Nations Laws (Conviction Against Torture). In blatant snubbing of the ruling of immigration court, in clear violation of due process, Supreme Court precedents and their progeny, and deliberately ignoring the relevant Codes of Federal Regulation, defendants in this suit unlawfully extended plaintiff's civil detention, and hence harmed him permanently, in addition to exposing him to various harms which come with confinement

---

[1] Immigration and Customs Enforcement

such as battery, disease, rape and death. After plaintiff promised them this upcoming suit, the contractors[2] to the federal government (defendants Frawley, Forshe, Martin and Wenzel) knowingly attempted to harm plaintiff with many episodes of injury (exposure to Hepatitis-C, solitary isolation for months, attempted murder, sexual abuse and fabrication of a suicide note). Plaintiff respectfully states the following Pennsylvania and Constitutional torts and statutory claims for relief.

## JURISDICTION AND VENUE

2. Plaintiff is a native and citizen of IRAN who lives in the United States in exile. He brings this action pursuant to 28 U.S.C. 1332 (diversity of citizenship). The venue of this action is proper since the actions and omissions complained of occurred within the geographical limits of Middle District of Pennsylvania.

## STATUTE OF LIMITATIONS

3. For the claims asserted, the statute of limitations is five years. Further, the statue of limitations is tolled for some of the counts according to the continuing conspiracy, continuous tort and/or continuous harm doctrines. The claims are filed within the statutory time limit.

## PARTIES TO THE SUIT

4. Bakhtiari, Alireza, is the pro se plaintiff.

5. Frederick J. Kent ("Kent"), was at all relevant times the legal counsel to the Filed Director and to the acting Field Director for ICE of Philadelphia. He is named as a defendant only in his individual capacity in this suit.

---

[2] Pike County Correctional Facility ("PCCF"), Lords Valley, Pennsylvania

6. Jason Madrigal ("Madrigal"), was at all relevant times the Deportation Officer[3] assigned to plaintiff. He is named as a defendant only in his individual capacity in this suit.

7. Jennifer Ritchey ("Ritchey"), was at all relevant times the Filed Director and/or the acting Field Director for ICE of Philadelphia. She is named as a defendant only in her individual capacity in this suit.

8. John F. Kelly ("Kelly"), was at all relevant times the Secretary for Department of Homeland Security ("DHS"). He is named as a defendant only in his individual capacity in this suit.

9. John Frawley (Corr. Sergeant at Pike County Correctional Facility) ("Frawley") was at all relevant times a direct contractor to ICE for detention services. He is named as a defendant only in his individual capacity in this suit.

10. Forshe (Corr. Sergeant at Pike County Correctional Facility) ("Forshe") was at all relevant times a direct contractor to ICE for detention services. She is named as a defendant only in her individual capacity in this suit.

11. Martin (Corr. Sergeant at Pike County Correctional Facility) ("Martin") was at all relevant times a direct contractor to ICE for detention services. He is named as a defendant only in his individual capacity in this suit.

12. Elise Wenzel (Corr. Administrator at Pike County Correctional Facility) ("Wenzel") was at all relevant times a direct contractor to ICE for detention services. She is named as a defendant only in her individual capacity in this suit.

---

[3] Agent Jason Madrigal was plaintiff's assigned deportation officer at the time. Agent Paul Posluzny was his supervisor at the time. Plaintiff interacted with both frequently and regularly about triggering the removal period and have plaintiff's substantive custody review performed or initiated. As of September 27th 2017, ICE Agent Campbell (DHS/ICE/ERO Unit at Allenwood Pennsylvania) became plaintiff's assigned Deportation Officer. Agent Campbell has **no** involvement in the violations alleged herein.

13. Paul Posluzny ("Posluzny") was at all relevant times the Supervising Deportation Officer assigned to plaintiff. He is named as a defendant only in his individual capacity in this suit.

14. Thomas R. Decker ("Decker") was at all relevant times the Filed Director and/or the acting Field Director for ICE of Philadelphia. He is named as a defendant only in her individual capacity in this suit.

15. United States of America is the defendant in its governmental and corporate capacities in this suit.

## EXHAUSTION-PLRA[4]

16. At the time of filing this petition, plaintiff is <u>no longer in custody</u>. But while in custody, in spite of defendants' full efforts to render the administrative remedies unavailable, Plaintiff fully exhausted those available to him. Plaintiff utilized numerous of the following: requests to staff or "Cop-out's", informal resolution attempts, proper grievance forms (if given to him), numerous letters to each defendants and their legal counsel.

17. Plaintiff's attempts were fully in compliance with the full tenets of Administrative Procedure Act.

## EXHAUSTION –FTCA[5]

18. Plaintiff notified the DHS officials, their Washington DC Counsel and their regional counsel of the incidents alleged and the harms incurred.

19. After exhausting pursuant to the PLRA, plaintiff utilized Standard Form -95 (FTCA Major Claims) and made a major claim to the counsel.

---

[4] Prison Litigation Reform Act
[5] Federal Tort Claims Act

20. As a pro se claimant, plaintiff had the authority to receive, entertain and settle any resolution offers and possibilities under FTCA.

21. Through their counsel, the defendants had the authority to offer, entertain and settle any resolution possibilities under FTCA.

22. The parties practiced such authorities and options. The defendants, including the United States, denied plaintiff's FTCA claim through their counsel.

### EXHAUSTION "8 C.F.R. 241.13"

23. Subsequent to *Zadvydas*[6], the former INS enacted new regulations in which it established a custody review procedure. *See* 8 C.F.R. 241.13. Section 241.13 "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." 8 C.F.R. 241.13(a). The regulations require the alien to provide good reason to believe there is no significant likelihood of removal to the country to which he was ordered removed in the reasonably future. 8 C.F.R. 241.13(a). The alien must commence the custody review process by submitting a request, upon which respondents will conduct a review in order to determine whether there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. 8 C.F.R. 241.13(c). Petitioner has exhausted available administrative remedies with respect to his claims. Initially, the defendants, through Madrigal and Posluzny, agreed to comply with the established law and release plaintiff on August 2nd 2017. Then, with improper motives, they changed their mind.

---

[6] Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001)

## CLEARLY ESTABLISHED RIGHTS

24. Through out this whole persecution, in each episode of injury (unlawful extension of civil confinement, exposure to Hepatitis-C, attempted murder, sexual abuse and fabrication of a suicide note), the defendants violated some clearly established statutory and constitutional rights that were owed plaintiff with clear contours. Any reasonable officer, even a rookie would have known these rights. None of the violations alleged in this suit pertain to gray areas; the defendants crossed some clearly established lines in their actions, decisions and omissions. Through out this whole persecution, the actions, decisions and omissions of the defendants served no valid purpose and it had nothing to do with their official duties: correctional, penological, security related or justified by institutional and personal safety. The actions and omissions alleged and complained of, are not matters of "judgment call", discretion or gray area. There was, at each relevant time, specific and fully enunciated policies, program statements ("PS") and Federal Codes of Regulation about each and every issue raised in this petition.

## FACTS COMMON TO ALL COUNTS

### *Deferral of removal under CAT*

25. Plaintiff entered the US on a student visa in January of 2002. In March of 2004, He was placed in removal proceedings for over-stay of visa. He religiously and dutifully attended each and every telephonic or in person hearing and missed none. In June of 2007, the IJ adjusted his status to permanent resident and terminated the proceedings. In March of 2012, a US Attorney in Eastern District of Missouri brought forth an indictment against him charging that he had caused a potential hindrance to an official proceeding [18 U.S.C. 1512(c )(2) ]. Subsequently on November 19th 2012, plaintiff pleaded guilty to this indictment and was sentenced to 51 months in federal

prison. On January 18th 2017, he exhausted this sentence, and then, he was detained by immigration officials. In March 2016, the Department of Homeland Security ("department", "DHS") brought forth a notice to appear, alleging removability, that his predicate crime of conviction [1512(c )(2)] is an aggravated felony. In pro se, plaintiff filed ample briefs and corroborating documents before the immigration court and asserted three grounds as defenses: <u>Aggravated Felony,</u> <u>Unconstitutional Vagueness</u> and <u>Relief under CAT</u>.

26. On April 18th 2017, in pro se, plaintiff appeared before IJ (Honorable Walter A. Durling, Immigration Review Court, York, PA) and a three hours long merits hearing was conducted. IJ issued his opinion and orders on May 3rd 2017. The IJ opined as follows:

• Issue No. 1: Aggravated Felony Determination – ruled for DHS and against the respondent [plaintiff in the instant case]

• Issue No. 2: Unconstitutional Vagueness of the Relevant Portion of INA – issued no ruling

• Issue No. 3: Particularly Serious Crime Determination– ruled for DHS and against the respondent

• Issue No. 4: Credibility Assessment– partly ruled for DHS and against the respondent and, partly in reverse

• Issue No. 5: Withholding of Removal– ruled for DHS and against the respondent

• Issue No. 6: Deferral of Removal – ruled for Respondent and against DHS

• Issue No. 7: Discretionary Relief under 212(H) – issued no ruling

• Deferral of removal under CAT was the crux of the decision (as far as triggering the removal period was concerned) and became **administratively and judicially final** on

May 3rd 2017. No one challenged this central issue, neither plaintiff nor the department. Indeed, the department did not appeal any aspect of the IJ's findings and opinion. Plaintiff filed a timely administrative appeal with the BIA[7]. BIA left the deferral (CAT) issue undisturbed, but issued its own legal analysis and dismissed the administrative appeal on September 6th 2017. Plaintiff filed a timely appeal with the Third Circuit on September 8th 2017. Plaintiff's position is that he was not removable to begin with. The questions are purely questions of law. But the IJ's decision to defer removal was <u>final, undisturbed and unchallenged</u> as of May 3rd 2017.

### *Seeking a Third Country of Removal*

27. The IJ ordered DHS to either find a third country to remove plaintiff to, or to release plaintiff by the end of the removal period, counting the clock from May 3rd 2017. At first they conceded to comply, but later on, the defendants changed their mind and <u>boldly and vindictively</u> ignored the IJ's order and the relevant law supporting it.

28. Plaintiff has only ties to two countries: 1) until the age of 24, Iran was plaintiff's home. But, plaintiff's parental family (parents and siblings, who all live in Iran) practically disowned plaintiff after plaintiff's conversion to Christianity back in 1994; 2) for the past 16 years, the US has been plaintiff's adopted home. Plaintiff's wife and kids are citizens and natives of the US. Plaintiff has no ties to any country other that US and Iran. Plaintiff's diligent efforts to obtain permission from some eleven (11) countries have failed, and to that matter, the ever diligent efforts of the defendants to find a third home for plaintiff have failed. Plaintiff has written[8] and made phone calls to the consulate from the following countries, numerous times each:

---

[7] Board of Immigration Appeals
[8] Plaintiff provided copies of all these correspondences to Defendants Madrigal and Posluzny. Plaintiff also submitted two versions of home plans, US equities, US prospective and past

- Australia
- Canada
- Germany
- Ireland
- Italy
- New Zealand
- Norway
- Spain
- Switzerland
- The Great Britain – United Kingdom
- The Philippines

### *Plaintiff's Interactions with Agents Madrigal and Posluzny*

29. After the IJ's order came out, ICE transferred plaintiff back to PCCF. There, plaintiff had a conversation with Madrigal in Pike County Correctional Facility, Pennsylvania ("PCCF") sometime early May 2017. Madrigal was clearly not happy with plaintiff's partial victory. His verbatim statement was: **"Givin' [*sic*] you CAT was some dumb shit to do! You ain' [*sic*] even sorry for comin' [*sic*] here and committin' [*sic*] a crime!"** Plaintiff informed Madrigal in that day that he was appealing IJ's order to BIA. Plaintiff handed Madrigal a copy of his notice of BIA appeal in that meeting. Madrigal's response was (verbatim): **"what ever!"**

30. Plaintiff submitted a home plan to Madrigal. This home plan was already approved by federal authorities (Probation Office for Western District of Missouri). But Madrigal rejected this home plan. His verbatim comment was: **"no way in hell you goin' [*sic*] out there!"** As to the reality that it was already approved by federal probation,

---

employment and family ties to the US etc.  But plaintiff's thorough adherence to CFR faced a reprimand instead:  Posluzny objected one time: **"Why you sendin' [*sic*] me so much shit!?!"**

Madrigal stated **"I don' [*sic*] give a damn!"** Madrigal gave no reason or explanation for rejecting this home plan.

31. Upon plaintiff's repeated requests, premised upon IJ's order, Madrigal brought forth a notice[9] of upcoming release on August 2nd 2017. Madrigal served a copy of this notice upon plaintiff in PCCF on June 13th 2107.

32. After June 13th 2017, on numerous occasions Madrigal and plaintiff, or Posluzny and plaintiff, had bitter and heated arguments, with the two accusing plaintiff of, in so many words and rhetoric, being a non-remorseful criminal deserving a lot more punishment, or, their disappointment that such a non-remorseful **"arrogant"** criminal **"comin'[sic] here"** **"getting CAT"** and **"still stayin' [*sic*] here"**. There where numerous ping pongs of words and arguments, with plaintiff reminding Madrigal and Posluzny that they are not punishers or adjudicators of crime, they are not judges, and that plaintiff's detention in immigration custody is a "civil detention", not deserving their editorials and arbitrary extensions to the punishments at their whim. Madrigal would walk away by staying "*we'll see about that!*"

33. To prove his case and point, Madrigal brought forth a second notice[10] of upcoming release. Madrigal said, as a matter of second thought, plaintiff would be released on December 5th 2017. Over plaintiff's numerous objections and bewilderment, Madrigal said that his earlier notice (one setting the date for August 2nd) had been an "*oopsie!*" In the same conversation Madrigal said that the earlier notice had been a "*booboo!*" Make no mistake! There was no "*oopsie!*" There was no "*booboo!*" Madrigal and Posluzny genuinely believe they have such authority to dispense punishment and elongate an alien's custody at their own whim. After giving plaintiff such capriciously

---

[9] **Exhibit 1** to the foregoing.
[10] **Exhibit 2** to the foregoing.

revised notice, plaintiff received yet another curtain call of the same old lectures on "remorse", "crime" and "punishment" from Madrigal, and from Posluzny.

34. <u>Conspiracy Defendants: Madrigal and Posluzny</u>. These two ICE agents clearly conspired to show plaintiff that they had the unilateral power to punish him, alongside or even above the courts of law. At each interaction Madrigal would state that his comments and decisions were "***Ok'ed***" by his superior Posluzny. A reasonable jury could infer that Madrigal and Posluzny, in cohorts, conspired by the meeting of minds, with specific intent to harm plaintiff and to violate his constitutional and statutory rights.

***Clearly established rights which are beyond judicial debate: "Zadvydas v. Davis" and its progeny***

35. Through out this whole persecution, the ICE agents have violated some clearly established statutory and constitutional rights with clear contours. Any reasonable agent, even a rookie would have known these rights. None of the violations, as herein alleged, pertains to gray areas; the agents have crossed some clearly established lines in their actions, decisions and omissions. Through out this whole persecution, the actions, decisions and omissions of the agents have served no valid purpose and had nothing to do with their official duties. The actions and omissions alleged are not matters of "judgment call", discretion or gray area.

36. It is beyond judicial debate, even for executive officers and law enforcement agents at ICE, that they cannot keep an alien in custody beyond the removal period, See *Demore v. Kim*, 538 U.S. 510, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003); *Clark v. Martinez*, 543 U.S. 371, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005); *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), and *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3rd Cir. 2011), see also 8 C.F.R. 241.13. The events which trigger the

removal period are also clearly established in the eyes of the law and any reasonable ICE agent in charge. It speaks volumes that, initially, the two defendants acknowledged this clearly established law. But then later on, for improper purposes and states of mind, they changed their mind (compare Exhibits 1 and 2).

37. DHS is not entitled to remove plaintiff to Iran, it has conceded as much, and it has not even challenged such legal truth. Madrigal and Posluzny admitted that they could not find a third country for plaintiff's removal. No matter how angry and resenting the ICE agents (Madrigal, Posluzny and the rest) are for perceiving plaintiff as a non-remorseful criminal alien, undeserving of deferral under CAT. Their personal feeling does not justify their blatant disregard for this clearly established law.

**Clearly established right which is beyond judicial debate: The courts can punish crime, ICE agents cannot!**

38. Through out this whole persecution, the ICE agents have violated some clearly established statutory and constitutional rights with clear contours. Any reasonable agent, even a rookie would have known these rights. None of the violations, as herein alleged, pertains to gray areas; the agents have crossed some clearly established lines in their actions, decisions and omissions. Through out this whole persecution, the actions, decisions and omissions of the agents have served no valid purpose and had nothing to do with their official duties. The actions and omissions alleged are not matters of "judgment call", discretion or gray area.

39. It is beyond judicial debate, even for executive officers, law enforcement agents and ICE agents, that they cannot keep an alien in custody beyond the removal period, *so they could unilaterally punish the criminal alien*. No matter how angry and resenting the ICE agents (Madrigal, Posluzny and the rest) are for perceiving plaintiff as

a <u>non-remorseful criminal alien, undeserving of deferral under CAT</u>. Their personal feeling does not justify their blatant disregard for this clearly established law **that only the courts -- independent judiciary --** get to punish an individual for crime. Law enforcement officials cannot unilaterally punish aliens for crime. It speaks volumes that, initially, the two defendants acknowledged this clearly established law. But then later on, for improper purposes and states of mind, they changed their mind (compare Exhibits 1 and 2).

### *Prior notices and attempts to exhaust remedy all went ignored*

40. Pursuant to 8 CFR 241.13, plaintiff submitted <u>**six (6)**</u> notices (May 15th, August 7th, August 28th, September 8th, October 6th, November 9th of 2017) informing defendants that they are bound by the clearly established law, mainly *Zadvydas* and its progeny to release Plaintiff. Plaintiff heard nothing back. At each and every instance out of six, plaintiff mailed the notice to Decker, Kelly, Kent, Madrigal, Posluzny and Ritchey. At each and every instance out of six, plaintiff delivered in person notice to Madrigal and Posluzny. At each and every instance out of six, plaintiff telephoned the offices of Decker, Kelly, Kent and Ritchey. None responded to any of the notices.

### *Intentional Exposure to Disease (Hepatitis-C) by the ICE contractors – Defendants Frawley, Forshe and Martin*

41. After exhausting his federal sentence, plaintiff was transferred to PCCF on January 25th 2017. Upon arrival plaintiff noticed that in his housing unit, the detainee on duty ("unit orderly") (John Doe-1 [11]) who was in charge of the unit foods services. Doe-1 was an old man who would drool (salivate) over the food trays while he handled them. Plaintiff approached Frawley, Forshe and Martin and discussed the matter with them. The

---

[11] This detainee's true identity is revealed in **exhibit 3**, under seal.

three began instantly bullying plaintiff and instructed plaintiff that the decision was not *"grievable"*. In a matter of few days, Doe-1 approached plaintiff and asked for help to pursue his legal rights: grievances, outside agencies and possibly lawsuits. John Doe-1 maintained that he was "Hepatitis-C" positive **[Exhibit 3]**. This made the matter even worse since Doe-1, the unit orderly and food services assignee, handled the detainees' food on regular basis. Plaintiff approached Martin again about the issue. This time Martin became absurdly abusive and told plaintiff (verbatim) *"you caught Hep-c when you fucked that camel back in Iraq!"*[12] Plaintiff approached Frawley again about the issue. This time Frawley, too, became absurdly abusive and told plaintiff (verbatim) *"you caught Hep-c in that third world country where you came from!"* Plaintiff approached Forshe again about the issue. Froshe again maintained that the issue was not *"grievable"* and instructed plaintiff *"you get into stuff like this again you gonna lose privileges! I doubt you got any at that country where you are headed right now!"*

42. About the issue of Hepatitis-C exposure, plaintiff wrote to Warden Craig E. Lowe of PCCF, the legal counsel for PCCF [KREDER, BROOKS, HAILSTONE & LUDWIG (220 PENN AVENUE, SCRANTON, PA 18503), JOHNSON, DUFFIE, STEWART & WEIDNER (301 MARKET STREET, LAMOYNE, PA 17043), GOLDBERG & KATZMAN, PC (4250 CRUMS MILL ROAD, SUITE 301, HARRISBURG, PA 17112)] But none of the above responded.

43. Specifically about the Hepatitis-C exposure, plaintiff wrote to Decker, Kelly, Kent, Madrigal, Posluzny and Ritchey. None responded.

---

[12] Exposed to Hepatitis-C at the time, plaintiff had more worries than to teach Martin the difference between Iraq and Iran. Plaintiff is Iranian and not Iraqi.

44. Specifically about the Hepatitis-C exposure, plaintiff wrote to Dr. Carl Hoffman and Dr. Cattel of PrimeCare, Inc. (medical provider, the sub-contractor to the contractor to ICE). None responded.

45. Plaintiff wrote to the administration of PCCF, its warden, lieutenants and sergeants and informed them that he was seeking assistance from the Pennsylvania Department of Health. This pursuit alone, and plaintiff's grievances, his un-relinquished concern for Hepatitis-C exposure of all immigration detainees, and his assistance to Doe-1 in filing grievances, caused immense retaliatory efforts from Wenzel, Frawley, Forshe and Martin:

- Frawley attempted to have plaintiff raped and murdered (*see infra*);

- Martin came to plaintiff's isolation cell at 2 AM one night and stole litigation sensitive documents – pertaining to the instant lawsuit, from plaintiff's cell (*see infra*);

- Martin fabricated/forged a "suicide note" with plaintiff's name on it, and then he proceeded to sexually abuse plaintiff (*see infra*);

- Wenzel kept plaintiff in solitary confinement from May until September 27th of 2017 - - the day when plaintiff left PCCF;

- These decisions and actions were taken **merely** for retaliatory purposes with no penological or security related reasons. The "but-for cause" for such actions and decisions was retaliation.

46. For the entire period of his time in ICE custody, plaintiff lived under immense fear that he had contracted Hepatitis-C from Doe-1. Plaintiff could not consume adequate amount of food, his blood pressure and heart rate were exponentially increased and he could not sleep due to extreme stress and anxiety. At the end of his custody under ICE, in

Clinton County Correctional Facility ("CCCF"), plaintiff was informed that fortunately, thankfully, he has scraped by Hepatitis-C free.

***Retaliatory confinement to solitary isolation after plaintiff refused to keep quiet about the mass Hepatitis-C exposure of the detainees***

47. After his main immigration hearing, plaintiff was transferred back to PCCF early May 2017. Wenzel kept plaintiff to solitary isolation upon arrival. Wenzel, as the head of the classification committee, is the sole decision maker in whether defendant would be housed in a regular unit or in isolation. Wenzel came to plaintiff's isolation cell (M unit) and offered him a written statement. The statement indemnified the PCCF from future suit and liability for the Hepatitis-C exposure. It also would bind plaintiff not to pursue any grievances for himself or other detainees about the mass Hepatitis-C exposure. Plaintiff refused to sign the indemnification since it was clearly in violation of the speech and access to courts clauses of the First Amendment. Plaintiff told Wenzel so, and he adamantly refused to sign such documents. Wenzel stated that due to the "sensitivity" of the issue, plaintiff would not be allowed back in a regular unit and he would be secluded in isolation.

48. Plaintiff was housed in solitary isolation from May until September of 2017, until the day he left PCCF, except for the period where Frawley meant to have plaintiff raped and murdered (see infra). In this period, in solitary isolation, plaintiff suffered from severe "SHU Syndrome". Plaintiff reported such syndromes to Ms. Nocilla of Psychology department at PCCF. Plaintiff pursued a grievance against Wenzel for her retaliatory decision and action to punish plaintiff by isolation for not indemnifying PCCF.

### Attempted Rape and Murder by Defendant's Frawley

49. Frawley, Froshe, Martin and Wenzel clearly knew that litigation was forthcoming. They constantly commented on this subject with various intimidating and snide remarks. Plaintiff was constantly seeking evidence, establishing the indifference, retaliatory and prejudiced mindset of the defendants, particularly their contractors at PCCF. There were three members of the PCCF staff whom Frawley had constantly subjected to sexual and racial harassments and abuse: correctional officers Ms. Michelle Doty, Ms. Jimenez and Ms. Coffer. Plaintiff began reaching out to each to secure their testimony and information for the purposes of the instant suit. This attempt to secure evidence intensely angered Fraley, Forshe, Martin and Wenzel.

50. On August 8th 2017, Frawley approached plaintiff in his assigned solitary confinement (Unit M, Cell 1). Frawley began questioning plaintiff as to why he was reaching out to Doty, Jimenez and Coffer. Plaintiff told Frawley, in all honesty, that their testimony was needed for the forthcoming litigation. Frawley became incensed in anger; his face was beet-red. He commented: *"wait till your buddy [John Doe-2] comes back, you and him will have a nice reunion!"* This horrified plaintiff. This meant Frawley was intent to have plaintiff raped and murdered. Instantly, plaintiff asked for a grievance sheet and reported the incident to Officer Howard (Badge No. 41) (see Exhibit 4).

51. Who is John Doe-2? Two of the detainees in custody of PCCF were John Doe-2 and John Doe-3 [true identities are disclosed in Exhibit 5--*under seal*]. Both were locals to northern Pennsylvania and were in custody of the commonwealth, pending criminal proceedings. Doe-3 alleged that he was raped by the PCCF staff and contacted plaintiff, asking him to assist him in brief writing and legal research. Plaintiff refused to help. Doe-3 and his close friend [Doe-2] were enraged. Doe-2 alleged that plaintiff was

"working with the cops!" Doe-2, a true violent career criminal, promised to first ***"fuck [plaintiff] then kill him!"*** As soon as plaintiff heard the message, while still housed in solitary confinement, back on May 11th 2017, he contacted the PCCF staff and asked for protection. Ms. Gomer (Badge No. 26) brought forth a written proof [Exhibit 5]. On behalf of PCCF and her supervisor, she promised plaintiff that they would protect him and he was placed on a separatee list (enemy list) with detainees Doe-2 and Doe-3 [Exhibit 5].

52. Frawley was truly scorned, and did not forget his promise. On September 5th 2017, 4 PM, officers Marzan and Johnson came to plaintiff's cell (Unit E, cell 2). They informed plaintiff that he was being taken to the front office (Intake area) to meet Frawley. At the front office, Frawley informed plaintiff that he was getting a new celli – Doe-2. Plaintiff was horrified. He began begging Frawley to remember his duty to protect plaintiff, to remember the enemy list, its content and its purpose. Frawley was laughing loud. He said: ***"Go in there with him, he won't hurt you, he might even give you some of his tobacco to smoke!"*** Over plaintiff's objections and pleadings, Frawley pushed plaintiff into Doe-2's isolation cell (unit D, cell 4). This horror, heartlessness and barbarianism alone, almost killed plaintiff.

53. Doe-2 jumped up, ready to attack and fight. Plaintiff began reasoning with him and asking to "calm down!" Plaintiff promised Doe-2 that he would help him and Doe-3 with their "rape lawsuit." Doe-2 changed his mind that did not attack. That very day plaintiff wrote to DHS/ICE officials, reported the incident and asked them to intervene. Plaintiff heard nothing back [Exhibit 6].

54. Days later, Doe-2 was released and forgot about the "rape lawsuit!" In spite of Frawley's wishes, Doe-2 did not touch plaintiff, but he could have easily raped or killed

plaintiff. Due to such incident, plaintiff lived under immense fear, he could not consume adequate amount of food, his blood pressure and heart rate were exponentially increased and he could not sleep due to extreme stress and anxiety

***Sergeant Martin: Theft of evidence, fabrication of a suicide note and sexual abuse***

THEFT OF EVIDENCE BY SERGEANT MARTIN

55. On September 19th, 2017, 2 AM, Martin sent for plaintiff to his cell (unit Delta, cell 4, bed C, "D-4-C") and woke plaintiff up. At the front office (intake) Martin told plaintiff he was searching plaintiff's cell and did not offer any reasons to why, or as to why search at such unusual hour: **2 AM**. After plaintiff went back to his cell he found critical evidence pertaining to the instant lawsuit missing, including, but not limited to, information and statements by Ms. Michelle Doty, Ms. Jimenez and Ms. Coffer, all former female staff of PCCF whom the administration had formerly sexually and racially victimized. Plaintiff immediately wrote a paper-request, handed it to officer Fean and asked for grievance level-one. Spoliation of evidence, theft of evidence (literally by such mid-night theft and robbery) by a party to this suit from the other is unlawful, unethical and **criminal** to say the least.

FABRICATION OF DOCUMENT AND SEXUAL ABUSE BY SERGEANT MARTIN

56. On September 19th, 2017, 2 AM, Martin stole documents from plaintiff's cell (unit Delta, cell 4, bed C, "D-4-C"). He took critical evidence pertaining to this suit. Plaintiff immediately wrote a paper request, handed it to officer Fean, and asked for grievance level one. Fean, instantly, walked the paper-slip (written request) to Martin's office. In order to retaliate and further cover up his theft of evidence, Marin came back to plaintiff's cell at 5 AM, same morning, and accused plaintiff of being suicidal. He said he

had received a "suicide note" from plaintiff. When plaintiff requested Martin to show the alleged note, Martin grinned and said ***"No son! That shit is top secret!"***

57. Martin stripped plaintiff, made sexual comments about plaintiff's genitals while he was nude and being strip-searched. Then Martin placed plaintiff bare, on a mattress in a suicide watch cell. It is the practice of PCCF to place constant watch, for at least 24 to 48 hours, for a genuine suicide concern. But Martin knew there was no suicide note, he was fully aware the whole thing was a just a ruse, therefore Martin only placed a constant watch for about two hours. Then he discontinued the watch, but he confined plaintiff, still fully naked, to the suicide cell for many days.

58. The staff from immigration and Ms. Nocilla from psychology, all asked to see Martin's alleged "suicide note". Martin would not produce any note. This speaks volumes. According to Nocilla, Martin was blatantly and brazenly snubbing every one and refusing to attempt to produce such alleged "suicide note". All involved agreed that "suicide note" was a just a **fiction**, a pretext fabricated by Martin to give him excuse to retaliate, humiliate and sexually abuse plaintiff. In this process, for no valid purposes, with no penological or institutional security intentions ever present, and only for retaliatory and abusive purposes, Martin stripped plaintiff fully nude and began making sexual remarks about plaintiff's genitalia. In the process, Martin fabricated a "suicide note" story, a note which he never produced to anyone, which never existed (Exhibit 7).

***Delivering notices, letters and memoranda to those with custody over plaintiff***

59. Beginning his confinement at PCCF, from January of 2017, as the time progressed, about each and every episode of injury (exposure to Hepatitis-C, attempted murder, sexual abuse and fabrication of a suicide note, retaliatory confinement to solitary and isolation), plaintiff sent out notices to the defendants in the following dates:

- March 7th 2017 (from inside PCCF)

- April 4th 2017 (from inside PCCF)

- April 6th 2017 (from inside York County Prison, YCP)

- April 10th 2017 (from inside YCP)

- April 20th 2017 (from inside YCP)

- September 5th 2017 (from inside PCCF)

- September 20th 2017 (from inside PCCF)

At each and every instance, plaintiff sent the memoranda to Decker, Kelly, Kent, Madrigal, Posluzny and Ritchey, pleading with them to intervene and stop the atrocities of their contractors (Frawley, Forshe, Martin and). None responded. At each and every instance, plaintiff sent copy of the notice to the legal counsel for PCCF [KREDER, BROOKS, HAILSTONE & LUDWIG (220 PENN AVENUE, SCRANTON, PA 18503), JOHNSON, DUFFIE, STEWART & WEIDNER (301 MARKET STREET, LAMOYNE, PA 17043), GOLDBERG & KATZMAN, PC (4250 CRUMS MILL ROAD, SUITE 301, HARRISBURG, PA 17112)] But none of the above responded.

### Hunger Strike and subsequent transfer out of PCCF

60. Civilized attempts to catch the attention of his captors, administrative remedy filings, correspondence to the legal counsel: none could stop the Frawley, Forshe, Martin and Wenzel from their intense retaliatory efforts. On September 19th 2017, about 6 AM, plaintiff went on a hunger strike, for a period of slightly more than three days, in that period plaintiff did not eat or drink anything. Ms. Nocilla of psychology monitored plaintiff closely. Plaintiff informed Nocilla that he would not cease from hunger strike until he is moved out of PCCF and transferred to another contracting jail. On September 22nd 2017 (after missing the 10th meals mark) Defendant Posluzny appeared at the

isolation cell where plaintiff was confined, and promised plaintiff that the following Wednesday he was being transferred to another contracting jail. Upon Posluzny's promise, plaintiff broke the hunger strike. Eventually on Wednesday September 27th, plaintiff was transferred out of PCCF and was taken to another ICE contractor-- Clinton County Correctional Facility ("CCCF").

61. On the morning of September 27th 2017, Martin came to plaintiff's cell in isolation (Unit E, Cell 2) and handcuffed plaintiff. He began escorting plaintiff to the front office so plaintiff would exchange into his own cloth and transfer out. While processing plaintiff for transfer, Martin stated: ***"I'll wait for your lawsuit son! Feel free to come back here to PA to go to court! it ain [sic] like someone is gonna hurt you! It ain [sic] like they is gonna find contraband in your shit or nothin! [sic]"*** This comment is clearly perceivable, and is meant, as a threat to intimidate plaintiff so he would not return to Pennsylvania for litigation purposes.

62. From January until September of 2017, on numerous occasions, in so many words and rhetoric, Frawley and plaintiff had bitter ping pongs of words and altercations. At each instance plaintiff reminded Frawley of his statutory and constitutional rights as a detainee. Frawley always responded: ***"you have no rights here. It is my job to put you on a plane back to your home country, and then you can bitch about your rights!"*** Plaintiff reminded Frawley at each instance that PCCF- the county jail, Frawley included, were contractors to ICE, for detention operations only. It was not, is not, Frawley's job to remove anyone from the country. Frawley disagreed and repeated the same profanities.

63. From January until September of 2017, on numerous occasions, in so many words and rhetoric, Forshe and plaintiff had bitter ping pongs of words and altercations. At each instance plaintiff reminded Forshe of his statutory and constitutional rights as a

detainee. Forshe always responded: ***"you have no rights here. We are putting you on a plane back to where you came from, and that's that!"*** Plaintiff reminded Forshe at each instance that PCCF- the county jail, Forshe included, were contractors to ICE, for detention operations only. It was not, is not, Forshe's job to remove anyone from the country. Froshe disagreed and repeated the same thing.

64. From January until September of 2017, on numerous occasions, in so many words and rhetoric, Martin and plaintiff had bitter ping pongs of words and altercations. At each instance plaintiff reminded Martin of his statutory and constitutional rights as a detainee. Martin always responded: ***"you ain [sic] got no rights here Son! I'm shipping your ass back to Iraq. There you can go back to fucking goats!"*** Plaintiff reminded Martin at each instance that PCCF- the county jail, Martin included, were contractors to ICE, for detention operations only. It was not, is not, Martin's job to remove anyone from the country. Martin disagreed and repeated the same profanities. Martin was always, probably still is, oblivious to the fact that plaintiff is not even Iraqi.

65. It is ***noteworthy***, that plaintiff was in custody of FCI-McKean for ten months prior to going to PCCF. After PCCF, plaintiff was in custody at CCCF for a total of ten weeks. **Not a single** grievance was needed or exchanged, not against plaintiff, and not against the staff, neither in FCI-McKean nor in CCCF. No jail is nice. Plaintiff never expected hotel quality treatment from his captors while in custody. But minding the civil nature of confinement, the staff in FCI-McKean and CCCF showed genuine, humane and reasonable care for the detainees. Plaintiff was released from custody on December 5th 2017 from CCCF.

## STATE OF MIND ALLEGATIONS

66. For each and every count of claim, for each and every episode of injury, plaintiff alleges, based on the facts stated supra:

• The actions and omissions of Frawley, Forshe, Martin and Wenzel were retaliatory, malicious, sadistic, done merely for the evil purpose of causing harm, inflicting unnecessary pain and with express intent to cause pain;

• The actions and omissions of Madrigal and Posluzny were malicious, done with improper intents, for discriminatory purposes, and for retaliatory and retributory intentions;

• The actions and omissions of Decker, Kelly, Kent, and Ritchey were deliberately indifferent, or alternatively, were negligent.

## INJURIES

67. For each and every count of claim, for each and every episode of injury (unlawful extension of confinement, exposure to Hepatitis-C, attempted murder, sexual abuse and fabrication of a suicide note, retaliatory solitary isolation), and each harm alleged herein, plaintiff has sought and is seeking medical treatment. The injuries are permanent. The injuries are of both physical and emotional in nature, to a level which needed and still need medical and clinical attention.

## COUNTS OF CLAIM

### COUNT (1)
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### PENNSYLVANIA LAW
**(FTCA for a contractor to federal government, or alternatively, direct Pennsylvania Tort claim against individual defendants Frawley, Forshe, Martin and Wenzel)
DEFENDANT: UNITED STATES OF AMERICA, FRAWLEY, FORSHE, MARTIN AND WENZEL**

68. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

69. This count is premised upon exposure to Hepatitis-C (Frawley, Forshe and Martin), attempted murder (Frawley), sexual abuse and fabrication of a suicide note (Martin), retaliatory solitary isolation (Wenzel).

70. The conducts of Frawley, Forshe, Martin and Wenzel, were extreme and outrageous, shocking to the conscience of any civilized person or society;

71. The conducts of Frawley, Forshe, Martin and Wenzel were intentional or reckless;

72. The conducts of the Frawley, Forshe, Martin and Wenzel caused severe emotional distress to a level which it needed and still needs medical and clinical attention;

73. As a result plaintiff has been substantively and substantially harmed.

**COUNT (2)**
**ASSAULT**
**(FTCA for a contractor to federal government, or
alternatively, direct Pennsylvania Tort claim against
individual defendant Martin)**
**PENNSYLVANIA LAW**
**DEFENDANT: UNITED STATES OF AMERICA AND MARTIN**

74. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

75. For no valid purposes, with no penological or institutional security intentions, and only for retaliatory and abusive purposes, Martin stripped plaintiff fully nude and began making sexual remarks about plaintiff's genitalia.

76. The named defendant acted with the unprivileged intent to put plaintiff in reasonable and immediate apprehension of harmful or offensive conduct;

77. The named defendant indeed did cause such apprehension;

78. As a result plaintiff has been substantively and substantially harmed.

## COUNT (3)
### FTCA-CIVIL CONSPIRACY
### PENNSYLVANIA LAW
### DEFENDANT: UNITED STATES OF AMERICA

79. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

80. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies by the collective "conspiracy defendants"—Madrigal and Posluzny.

81. The Conspiracy Defendants acted with a common purpose to do the unlawful acts with the unlawful purposes;

82. The Conspiracy Defendants committed overt acts in furtherance of the unlawful purposes;

83. As a result plaintiff has been substantively and substantially harmed.

## COUNT (4)
### FTCA-NEGLIGENCE
### PENNSYLVANIA LAW
### (Negligence toward plaintiff's safety in the hands of their contractors, his medical needs and toward plaintiff's numerous notices and pleas for help)
### DEFENDANT: UNITED STATES OF AMERICA

84. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

85. Plaintiff was in federal custody, the federal agents had a duty to care for plaintiff. They woefully failed. Decker, Kelly, Kent, Madrigal, Posluzny and Ritchey negligently ignored plaintiff's notices and pleas for help. The named defendants had a duty and obligation recognized by the law for them to conform to a certain standard of conduct;

86. The named defendants failed to conform to that standard and a casual connection exists between the actions and omissions of defendants and the resulting injury;

87. As a result plaintiff has been substantively and substantially harmed.

## COUNT (5)
## FTCA-NEGLIGENCE-SPECIAL RELATIONSHIP
## PENNSYLVANIA LAW
(Negligence toward plaintiff's safety in the hands of their
contractors, his medical needs and toward plaintiff's
numerous notices and pleas for help for protection against
PCCF)
## DEFENDANT: UNITED STATES OF AMERICA

89. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

90. Plaintiff was in federal custody, the federal agents had a duty to care for plaintiff. They woefully failed. Decker, Kelly, Kent, Madrigal, Posluzny and Ritchey negligently ignored plaintiff's notices and pleas for help. The named defendants had a duty and obligation recognized by the law for them to conform to a certain standard of conduct;

91. A special relationship existed between plaintiff and the above named defendants, one of full reliance and trust for protection and care. Plaintiff could not care for his own medical needs or protect himself. He was in care, control and custody of the defendants.

92. The named defendants had a duty and obligation recognized by the law for them to conform to a certain standard of conduct;

93. The named defendants failed to conform to that standard;

94. A casual connection exists between the actions and omissions of defendants and the resulting injury;

95. As a result plaintiff has been substantively and substantially harmed.

## COUNT (6)
## FTCA-NEGLIGENCE
## PENNSYLVANIA LAW
(Negligence toward plaintiff's numerous notices about
Madrigal and Posluzny's unlawful unilateral extension of
the confinement)
## DEFENDANT: UNITED STATES OF AMERICA

96. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

97. Plaintiff was in federal custody, the federal agents had a duty to care for plaintiff. They woefully failed. Decker, Kelly, Kent, and Ritchey negligently ignored plaintiff's notices about what Madrigal and Posluzny were doing. The named defendants had a duty and obligation recognized by the law for them to conform to a certain standard of conduct;

98. The named defendants had a duty and obligation recognized by the law for them to conform to a certain standard of conduct;

99. The named defendants failed to conform to that standard;

100. A casual connection exists between the actions and omissions of defendants and the resulting injury;

101. As a result plaintiff has been substantively and substantially harmed.

### COUNT (7)
### FTCA-NEGLIGENCE-SPECIAL RELATIONSHIP
### PENNSYLVANIA LAW
(Negligence toward plaintiff's numerous notices about
Madrigal and Posluzny's unlawful unilateral extension of
the confinement)
### DEFENDANT: UNITED STATES OF AMERICA

102. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

103. Plaintiff was in federal custody, the federal agents had a duty to care for plaintiff. They woefully failed. Decker, Kelly, Kent, and Ritchey negligently ignored plaintiff's notices about what Madrigal and Posluzny were doing. The named defendants had a duty and obligation recognized by the law for them to conform to a certain standard of conduct;

104. A special relationship existed between plaintiff and the above named defendants, one of full reliance and trust for protection and care. Plaintiff could not care for his or protect himself. He was in care, control and custody of the defendants.

105. The named defendants had a duty and obligation recognized by the law for them to conform to a certain standard of conduct;

106. The named defendants failed to conform to that standard;

107. A casual connection exists between the actions and omissions of defendants and the resulting injury;

108. As a result plaintiff has been substantively and substantially harmed.

**COUNT (8)**
**42 U.S.C. § 1985(2)**
**CONSPIRACY DEFENDANTS: MADRIGAL AND POSLUZNY**

109. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

110. The Conspiracy Defendants conspired for the purpose of depriving, either directly or indirectly, plaintiff of equal protection of the laws, or of equal privileges and immunities under the laws. They made affirmative actions and omissions in furtherance of the conspiracy, whereby plaintiff is injured in his person, property and is deprived of his rights.

111. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies by the collective "conspiracy defendants".

112. As a result plaintiff has been substantively and substantially harmed.

**COUNT (9)**
**42 U.S.C. § 1985(3)**
**CONSPIRACY DEFENDANTS: MADRIGAL AND POSLUZNY**

113. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

114. The Conspiracy Defendants conspired for the purpose of depriving plaintiff, either directly or indirectly, of equal protection of the laws, or of equal privileges and immunities under the laws. They made affirmative actions and omissions in furtherance of the conspiracy, whereby plaintiff is injured in his person, property and is deprived of his rights.

115. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies by the collective "conspiracy defendants".

116. As a result plaintiff has been substantively and substantially harmed.

## COUNT (10)
### 42 U.S.C. § 1986
### CONSPIRACY DEFENDANTS: MADRIGAL AND POSLUZNY

117. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

118. The Conspiracy Defendants had clear knowledge of the conspiracies alleged in the above two counts [1985(2) and 1985(3)], and that any of the wrongs alleged were about to be committed. The Conspiracy Defendants had the power to prevent the conspiracy but they deliberately chose to do nothing.

119. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies by the collective "conspiracy defendants".

120. As a result plaintiff has been substantively and substantially harmed.

## COUNT (11)
### BIVENS –FIFTH AMENDMENT
### *ALTERNATIVELY*
### 42 U.S.C. 1983-FOURTEENTH AMENDMENT
### DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
### (EXPOSURE TO HEPATITIS-C)
### DEFENDANTS: FRAWLEY, FORSHE AND MARTIN

121. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

122. Frawley, Forshe and Martin, as federal contractors, had direct custody over plaintiff. Plaintiff delivered numerous notices to each and every one of the three that he was exposed to Hepatitis-C. A man who was Hepatitis-C positive was put in charge of detainees' food. He could have easily, intentionally or unintentionally contaminated everyone with the deadly disease. Instead of caring, and effectuating a change, the three defendants bullied plaintiff instead. Defendants were deliberately indifferent to plaintiff's objectively serious medical needs. Their conducts in this regard were truly repugnant to the conscience of mankind considering the urgency which existed.

123. They acted with culpable state of mind, with retaliatory and discriminatory animus. They disregarded the excessive risk to plaintiff's health and his life.

124. As a result plaintiff has been substantively and substantially harmed.

### COUNT (12)
### BIVENS –FIFTH AMENDMENT
### DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
### (EXPOSURE TO HEPATITIS-C)
### DEFENDANTS: DECKER, KELLY, KENT, MADRIGAL, POSLUZNY AND RITCHEY

125. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

126. Decker, Kelly, Kent, Madrigal, Posluzny and Ritchey, as federal agents in charge, had primary custody over plaintiff. Plaintiff delivered numerous notices to each and

every one Plaintiff delivered numerous notices to each and every one of them that he was exposed to Hepatitis-C. A man who was Hepatitis-C positive was put in charge of detainees' food. He could have easily, intentionally or unintentionally contaminated everyone with the deadly disease. Instead of caring, and effectuating a change, they looked the other way. Defendants were deliberately indifferent to plaintiff's objectively serious medical needs. Their conducts in this regard were truly repugnant to the conscience of mankind considering the urgency which existed.

127. They acted with culpable state of mind, with retaliatory and discriminatory animus. They disregarded the excessive risk to plaintiff's health and his life.

128. As a result plaintiff has been substantively and substantially harmed.

### COUNT (13)
### BIVENS –FIFTH AMENDMENT
### *ALTERNATIVELY*
### 42 U.S.C. 1983-FOURTEENTH AMENDMENT
### FAILURE TO PROTECT (FROM DOE-2)
### DEFENDANT: FRAWLEY

129. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

130. It is a maxim of correctional industry that detainees cannot protect themselves. They solely rely on the guards to protect them against other detainees and against other violent guards. In this specific case, the above named defendant placed plaintiff in the same cell with Doe-2, in a calculated fashion to expose plaintiff to rape and murder. Plaintiff pleaded with Frawley and begged him not to. But by design, maliciously and sadistically, Frawley was intent to see plaintiff raped and murdered. This was a cold hearted, evil and hateful act of retaliation.

131. Plaintiff was incarcerated under conditions posing a substantial risk of serious harm; and the defendant was deliberately indifferent to that risk.

132. In this specific case, defendant knew that plaintiff faced a substantial risk of harm, and he disregarded that risk by failing to take reasonable measures to abate the harm and protect plaintiff.

133. As a result plaintiff has been substantively and substantially harmed.

## COUNT (14)
## BIVENS –FIFTH AMENDMENT
## FAILURE TO PROTECT (FROM THEIR CONTRACTORS--FRAWLEY, FORSHE, MARTIN AND WENZEL)
## DEFENDANTS: DECKER, KELLY, KENT, MADRIGAL, POSLUZNY AND RITCHEY

134. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

135. Federal Agents of ICE, the above named defendants, had primary custody over plaintiff. Inhumane tormentors such as Frawley, Froshe, Martin and Wenzel were their contractors. It is a maxim of correctional industry that detainees cannot protect themselves. They solely rely on their captors to protect them against other detainees and against other violent guards. In this specific case, the above named defendants were on notice that their contractors at PCCF were hell-bent to harm plaintiff. But they did not care, they looked the other way.

136. Plaintiff was incarcerated under conditions posing a substantial risk of serious harm; and the defendant was deliberately indifferent to that risk.

137. In this specific case, defendant knew that plaintiff faced a substantial risk of harm, and he disregarded that risk by failing to take reasonable measures to abate the harm and protect plaintiff.

138. As a result plaintiff has been substantively and substantially harmed.

## COUNT (15)
## BIVENS –FIFTH AMENDMENT
## _ALTERNATIVELY_

## 42 U.S.C. 1983-FOURTEENTH AMENDMENT
## GOVERNMENT (STATE) CREATED DANGER
### DEFENDANTS: FRAWLEY, FORSHE AND MARTIN

139. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

140. In pushing plaintiff in a cell with Doe-2 (Frawley), in knowingly placing an individual with Hepatitis-C in charge of food services and in charge of the meal trays and then ignoring plaintiff's notices of the danger (Frawley, Martin, Froshe), in knowingly fabricating a suicide note (Martin) for the purposes of calculated sexual abuse, these defendants placed plaintiff in grave danger, a danger which otherwise did not exist. Sadistically, they were intent to see Plaintiff harmed.

141. The harm ultimately caused was foreseeable and fairly direct;

142. The defendants acted in willful disregard for the safety of the plaintiff;

143. There existed a relationship between these defendants (government contractors, or alternatively, state officials) and the plaintiff (detainee in their care, control and custody);

144. These defendants (government officials, correctional officers) used their authority to create an opportunity that otherwise would not have existed for the third party's wrongful conduct and their harmful acts to occur.

145. As a result plaintiff has been substantively and substantially harmed.

## COUNT (16)
## BIVENS –FIFTH AMENDMENT
## GOVERNMENT (STATE) CREATED DANGER
### DEFENDANTS: DECKER, KELLY, KENT, MADRIGAL, POSLUZNY AND RITCHEY

146. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

147. Frawley, Forshe, Martin and Wenzel, as federal contractors, were sadistically intent to see Plaintiff harmed. Federal Agents of ICE, the above named defendants, had primary custody over plaintiff. Inhumane tormentors such as Frawley, Froshe, Martin and Wenzel were their contractors. It is a maxim of correctional industry that detainees cannot protect themselves. They solely rely on their captors to protect them against other detainees and against other violent guards. In this specific case, the above named defendants were on notice that Frawley, Forshe and Martin were hell-bent to harm plaintiff. But they did not care, they looked the other way.

148. The harm ultimately caused was foreseeable and fairly direct;

149. The defendants acted in willful disregard for the safety of the plaintiff;

150. There existed a relationship between these defendants (government officials, correctional officers) and the plaintiff (detainee in their care, control and custody);

151. These defendants (government officials, correctional officers) used their authority to create an opportunity that otherwise would not have existed for the third party's wrongful conduct and their harmful acts to occur.

152. As a result plaintiff has been substantively and substantially harmed.

### COUNT (17)
### BIVENS –FIRST AMENDMENT RETALIATION
### *ALTERNATIVELY*
### 42 U.S.C. 1983–FIRST AMENDMENT RETALIATION
### DEFENDANTS: FRAWLEY, MARTIN AND WENZEL

153. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

154. Frawley, Martin and Wenzel clearly knew that litigation was forth-coming. They constantly commented on the subject with various intimidating and snide remarks. Plaintiff was constantly filing grievances, writing letters and notices to the parties

involved and their counsel, seeking evidence, establishing the indifference, retaliatory and prejudiced mindset of the defendants, particularly their contractors at PCCF. There were three members of the PCCF staff whom Frawley had constantly subjected to sexual and racial harassments and abuse: correctional officers Ms. Michelle Doty, Ms. Jimenez and Ms. Coffer. Plaintiff began reaching out to each to secure their testimony and information for the purposes of the instant suit. These attempts to resolve the matter, to exhaust grievances or to secure evidence, intensely angered Fraley, Martin and Wenzel. This type of activity and speech was protected by the constitution.

155. Plaintiff's speech at issue was protected;

156. The defendants took adverse action against the plaintiff: attempted murder (Frawley), sexual abuse and fabrication of a suicide note (Martin), confinement to solitary isolation (Wenzel);

157. There was a clear causal connection between the protected speech and the adverse actions;

158. As a result plaintiff has been substantively and substantially harmed.

## COUNT (18)
### BIVENS –FIRST AMENDMENT RETALIATION
### DEFENDANTS: MADRIGAL AND POSLUZNY

159. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

160. After June 13th 2017, on numerous occasions Madrigal and plaintiff, or Posluzny and plaintiff, had bitter and heated arguments, accusing plaintiff of, in so many words and rhetoric, being a non-remorseful criminal deserving a lot more punishment, or, their disappointment that such a non-remorseful "**arrogant**" criminal "**getting CAT**" and "**still stayin' [*sic*] here**". There where numerous ping pongs of words and arguments, with

plaintiff reminding Madrigal and Posluzny that they are not punishers or adjudicators of crime, they are not judges, and that plaintiff's detention in immigration custody is a "civil detention", not deserving their editorials and arbitrary appendages of punishments at their whim. This type of activity and speech was protected by the constitution, but Madrigal would walk away by staying *"we'll see about that!"* To retaliate, Madrigal and Posluzny extended plaintiff's detention by four months.

161. Plaintiff's speech at issue was protected;

162. The defendants took adverse action against the plaintiff;

163. There was a clear causal connection between the protected speech and the adverse actions;

164. As a result plaintiff has been substantively and substantially harmed.

**COUNT (19)**
**BIVENS – FIFTH AMENDMENT-EQUAL PROTECTION CLAUSE**
*ALTERNATIVELY*
**42 U.S.C. 1983— FOURTEENTH AMENDMENT-EQUAL PROTECTION**
**CLAUSE**
**DEFENDANTS: FRAWLEY, FORSHE, MARTIN, WENZEL, MADRIGAL AND POSLUZNY**

165. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

166. To borrow vocabulary from defendants themselves: Madrigal's verbatim statement was: **"Givin' [*sic*] you CAT was some dumb shit to do! You ain' [*sic*] even sorry for comin' [*sic*] here and committin' [*sic*] a crime!"** Martin told plaintiff (verbatim) *"you caught Hep-c when you fucked that camel back in Iraq!"* Frawley told plaintiff (verbatim) *"you caught Hep-c in that third world country where you came from."* Plaintiff is Iranian, a protected minority for the purposes of the legal theory asserted in this count of claim.

167. Plaintiff is a member of the protected and excluded group, cognizable by law;

168. The distinction and under-representation of plaintiff's ethnic, racial and national group is substantial;

169. Were plaintiff not a member of the protected group, then defendants would not have deprived him of his rights as enumerated supra.

170. Compared to those similarly situated, plaintiff was treated selectively and disparately;

171. As a result plaintiff has been substantively and substantially harmed.

**COUNT (20)**
**BIVENS –FIFTH AMENDMENT**
**PROCEDURAL DUE PROCESS**
**DEFENDANTS: MADRIGAL AND POSLUZNY**

172. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

173. It is beyond judicial debate, even for executive officers and law enforcement agents at ICE, that they cannot keep an alien in custody beyond the removal period, See *Demore v. Kim*, 538 U.S. 510, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003); *Clark v. Martinez*, 543 U.S. 371, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005); *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), and *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3rd Cir. 2011), see also 8 C.F.R. 241.13. The events which trigger the removal period are also clearly established in the eyes of the law and any reasonable ICE agent in charge. This procedure under the law of Fifth Amendment is clearly established and in place to protect plaintiff. But knowingly and intentionally, Madrigal and Posluzny extended plaintiff's confinement for four months further. They themselves brought notice at first (Exhibit 1) with the correct release date (August 2nd 2017, 90 days after the IJ's

order). But later on, for unconstitutional motives, they changed the release date up to December 5th 2017 (Exhibit 2).

174. As a result plaintiff has been substantively and substantially harmed.

**COUNT (21)**
**BIVENS – FIFTH AMENDMENT- SUBSTANTIVE DUE PROCESS**
*ALTERNATIVELY*
**42 U.S.C. 1983— FOURTEENTH AMENDMENT- SUBSTANTIVE DUE PROCESS**
**DEFENDANTS: FRAWLEY, FORSHE, MARTIN, WENZEL, MADRIGAL AND POSLUZNY**

175. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

176. In pushing plaintiff in a cell with Doe-2 (Frawley), in knowingly placing an individual with Hepatitis-C in charge of food services and in charge of the meal trays and then ignoring plaintiff's notices of the danger (Frawley, Martin, Froshe), in knowingly fabricating a suicide note just so he could sexually abuse plaintiff (Martin), in isolating plaintiff in solitary just to retaliate and retribute (Wenzel), these defendants committed conscience-shocking acts. By unilaterally adding four months to plaintiff's detention, even though they knew Frawley, Forshe, Martin and Wenzel were intent to harm plaintiff, even though there are general dangers of confinement, Madrigal and Posluzny committed conscience-shocking acts.

177. The defendants deprived the plaintiff of his life, property and liberty interests;

178. The defendants' actions were so far beyond the outer limits of legitimate government action that **no process** could cure the defendants' actions. Their conducts and decisions were arbitrary, conscience-shocking, and oppressive in the constitutional sense and *ultra vires* in its truest sense.

179. As a result plaintiff has been substantively and substantially harmed.

**COUNT (22)**
**BIVENS – FOURTH AMENDMENT**
**UNLAWFUL SEARCH AND SEIZURE (MARTIN SEARCHED THE CELL AT 2AM, ONLY TO STEAL EVIDENCE)**
***ALTERNATIVELY***
**42 U.S.C. 1983— – FOURTH AMENDMENT**
**UNLAWFUL SEARCH AND SEIZURE (MARTIN SEARCHED THE CELL AT 2AM, ONLY TO STEAL EVIDENCE)**
**DEFENDANT: MARTIN**

180. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

181. On September 19th, 2017, 2 AM, Martin sent for plaintiff to his cell (unit Delta, cell 4, bed C, "D-4-C") and woke plaintiff up. At the front office (intake) Martin told plaintiff he was searching plaintiff's cell and did not offer any reasons to why, or as to why search at such unusual hour: **2 AM**. After plaintiff went back to his cell he found critical evidence pertaining to the instant lawsuit missing, including, but not limited to, information and statements by Ms. Michelle Doty, Ms. Jimenez and Ms. Coffer, all former female staff of PCCF whom the administration had formerly sexually and racially victimized. This evidence which Martin stole was directly supporting the instant suit. There was no penological or security related excuse for Martin's action. Martin searched the cell only to steal evidence.

182. Plaintiff did not consent to the search;

183. The search was not otherwise privileged, it was done with no good faith, no probable cause and had no legal justification;

184. As a result plaintiff has been substantively and substantially harmed.

**COUNT (23)**
**BIVENS – FOURTH AMENDMENT**
**UNLAWFUL SEARCH AND SEIZURE (UNLAWFUL STRIP-SEARCH FOR THE PURPOSES OF SEXUAL ABUSE)**
***ALTERNATIVELY***
**42 U.S.C. 1983— – FOURTH AMENDMENT**

## UNLAWFUL SEARCH AND SEIZURE (UNLAWFUL STRIP-SEARCH FOR THE PURPOSES OF SEXUAL ABUSE)
### DEFENDANT: MARTIN

185. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 25 to 67;

186. On September 19th 2017, Martin knowingly fabricated/forged a suicide note, as a pretext. Then Martin proceeded to perform a strip-search, for the purposes of, and as a pretext for, sexually abusing plaintiff and humiliating him. There was absolutely no valid reason for the search. There was no penological or security related excuse for Martin's action.

187. Plaintiff did not consent to the search;

188. The search was not otherwise privileged, it was done with no good faith, no probable cause and had no legal justification;

189. As a result plaintiff has been substantively and substantially harmed.

## DAMAGES (JURY TRIAL REQUESTED)

190. Against each individual **DEFENDANTS: FRAWLEY, FORSHE, MARTIN, WENZEL, MADRIGAL AND POSLUZNY,** Plaintiff requests assessment of:

> Actual Damages: 400,000.00 (USD $)
>
> Punitive Damages: 550,000.00 (USD $)
>
> Costs of Suit: 50,000.00 (USD $)

191. Against each individual **DEFENDANTS: DECKER, KELLY, KENT AND RITCHEY,** Plaintiff requests assessment of:

> Actual Damages: 200,000.00 (USD $)
>
> Costs of Suit: 50,000.00 (USD $)

192. Against the **DEFENDANT: UNITED STATES**, Plaintiff requests assessment of:

       Actual Damages: 1,000,000.00 (USD $)

       Punitive Damages: 2,500,000.00 (USD $)

       Costs of Suit:  500,000.00 (USD $)

193. Plaintiff prays for assessment of a **TOTAL OF 11,000,000 (USD $)** against all the defendants combined.

194. In addition, plaintiff prays for any and all other relief deemed just and proper under the circumstances.

## VERIFICATION

195. I, the undersigned, plaintiff in pro se, certify and verify that all the factual assertions in the foregoing are true and accurate to the best of plaintiff's memory, knowledge and belief.

## SIGNATURE SHEET

Respectfully Submitted,

On this _December 25, 2017_

**ALIREZA BAKHTIARI**
**775 SEVEN HILLS LANE,**
**SAINT CHARLES, MISSOURI 63304**

*APPEARING IN PRO SE*

## INDEX OF APPENDICES IN ENCLOSURE:

### *(ALL FILED UNDER SEAL)*

- **EXHIBIT 1:** Notice, Setting Release date on August 2nd 2017

- **EXHIBIT 2:** Notice, Setting Release date on December 5th 2017

- **EXHIBIT 3:** Declaration of Facts by the Source for Hepatitis-C exposure

- **EXHIBIT 4:** Notice: Frawley expressly promised to have plaintiff raped and murdered. Plaintiff asked for a grievance sheet and reported the incident to Officer Howard (Badge No. 41).

- **EXHIBIT 5:** Ms. Gomer (Badge No. 26) brought forth a written proof on behalf of PCCF and her supervisor, she promised plaintiff that they would protect him and he was placed on a separatee list (enemy list) with detainees Doe-2 and Doe-3.

- **EXHIBIT 6**: Reporting Frawley's action--attempted Murder, to DHS/ICE officials the same day of the incident.

- **EXHIBIT 7:** Theft of evidence, fabrication of document and sexual abuse by Defendant Martin (internal PCCF grievance filed on September 20th 2017).