## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALIREZA BAKHTIARI

    PLAINTIFF,

    v.

JASON MADRIGAL, *ET AL.*,

    Defendants.

No. 3:18-CV-38

(JUDGE CAPUTO)

(MAGISTRATE JUDGE CARLSON)

### MEMORANDUM

Presently before me is Magistrate Judge Carlson's Report and Recommendation (Doc. 83) to the Motion to Dismiss filed by Defendants Kent Frederick, Thomas R. Decker, Jennifer D. Ritchey, Paul Posluszny, Jason Madrigal ("ICE Defendants"), and the United States of America ("Federal Defendants"). (Doc. 43). For the reasons that follow, the Magistrate Judge's recommendation to grant the Motion to will be adopted.

### I. Background

The facts as alleged in the Complaint are as follows:

Plaintiff, an Iranian national, entered the United States on a student visa in January of 2002. (Doc. 1 ¶ 25). Removal proceedings were initiated against him for overstaying his visa in March of 2004. (*Id.*). By June of 2007, Plaintiff became a lawful permanent resident of the United States and his removal proceedings were terminated. (*Id.*).

On November 19, 2012, Plaintiff pleaded guilty to obstructing, influencing, or impeding any official proceeding under 18 U.S.C. § 1512(c)(2) and was sentenced to fifty-one (51) months in prison. (*Id.*). Removal proceedings were again initiated against Plaintiff and he was taken into custody by the Department of Homeland Security ("DHS") upon completing his criminal sentence in January of 2017. (*Id.*). United States Immigration Judge ("IJ") Walter A. Durling issued a removal order on April 18, 2017 and Plaintiff was transferred to Pike County Correctional Facility

("PCCF") by Immigration and Customs Enforcement ("ICE").[1]  (*Id.* ¶¶ 26, 29). Plaintiff appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), who upheld the removal order on September 6, 2017.  (*Id.*).  Plaintiff was ultimately released from detention on December 5, 2017.  (*Id.* ¶ 33).

Plaintiff alleges a number of hostile verbal encounters took place between himself and Defendant Madrigal while he was detained at PCCF, which he claims were "[o]k'ed" by Defendant Madrigal's supervisor, Defendant Posluszny. (*Id.* at ¶¶ 29-33). Additionally, Plaintiff alleges he was exposed to Hepatitis-C from an inmate who salivated on the food trays while "handling" them and that he reported this concern to a number of DHS and PCCF officials.  (*Id.* ¶ 41, 43).[2]  Plaintiff alleges some PCCF officials retaliated against his Hepatitis-C complaints by attempting to have "plaintiff raped and murdered[,]" stealing documents from his cell, sexually abusing him, placing him in solitary confinement, and verbally harassing him.  (*Id.* ¶¶ 45, 61-64).

On January 5, 2018, Plaintiff filed the instant twenty-three (23) count Complaint against the ICE Defendants, John Kelly,[3] and the United States as well as Sgt. John Frawley, Sgt. Forshe, Sgt. Martin,[4] Sgt. Martin, and Elise Wenzel, Correctional Administrator ("PCCF Defendants") alleging a number of civil rights violations and

---

[1]    The IJ also granted Plaintiff deferral of removal under the Convention Against Torture and ordered the DHS to either find a different country to send Plaintiff or release him by the end of the removal period.  (*Id.* ¶¶ 27, 28).

[2]    Upon his release from PCCF, Plaintiff was informed he did not contract Hepatitis-C.  (*Id.* ¶ 46).

[3]    On June 15, 2018, I adopted Magistrate Judge Carlson's Report and Recommendation to dismiss the claims against John Kelly with prejudice.  (*See* Doc. 26 *generally*).

[4]    Plaintiff provided only the following information for these defendants' names, "Forshe (Corr. Sergeant at Pike County Correctional Facility" and "Martin (Corr. Sergeant at Pike County Correctional Facility" in his Complaint.  (*Id.* ¶¶ 10-11).

tortious conduct under both Pennsylvania law and the Federal Tort Claims Act ("FTCA"). (*See* Doc. 1 *generally*).

On August 29, 2018, the Federal Defendants filed a Motion to Dismiss all claims against them. (Doc. 43). Magistrate Judge Carlson issued the instant Report and Recommendation on December 27, 2018, recommending that the Federal Defendants' Motion to Dismiss be granted. (Doc. 83). Plaintiff timely filed objections to the Report and Recommendation on January 9, 2019 and the Federal Defendants filed a response to the objections on March 1, 2019. (Doc. 85; Doc. 93). This matter has therefore been fully briefed and is ripe for disposition.

## II. Legal Standards

### A.    Standard of Review of Objections to a Report and Recommendation

When objections to the magistrate judge's Report are filed, the court must conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). However, this only applies to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a *de novo* determination." *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Indeed, the Third Circuit has instructed that "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id*. at 7. In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Uncontested portions of the Report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See*, *e.g.*, *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## B.     12(b)(1) Motion to Dismiss

When ruling on a 12(b)(1) motion, "the district court must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts." *Fed. Realty Inv. Trust v. Juniper Props. Group*, No. 99-3389, 2000 WL 45996, at \*3 (E.D.Pa. Jan. 21, 2000) (citing *Haydo v. Amerikohl Mining, Inc.*, 830 F.2d 494, 496 (3d Cir. 1987)).  A court may treat a Rule 12(b)(1) motion either as a facial or a factual challenge to its subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 189 (3d Cir. 2000). When deciding a Rule 12(b)(1) facial attack, the Court may only consider the allegations contained in the complaint and exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and "undisputably authentic" documents which the plaintiff has identified as a basis of his claim and which the defendant has attached as exhibits to his motion to dismiss.  *See Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *Dykes v. Southeastern Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1567 (3d Cir. 1995) (noting that where "a complaint relies upon a document, [] the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished").  If the defendant submits and the court considers evidence that controverts the plaintiff's allegations, the court must treat the motion as a factual challenge. *Gould*, 220 F.3d at 178.  In such cases, "the trial court is free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  The court is "not confined to the allegations in the complaint." *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002), *overruled on other grounds by Animal Sci. Prods. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011).  No presumption of truthfulness attaches to the plaintiff's allegations, and the burden of proof is on the plaintiff to show that the court possesses jurisdiction. *Id.*  The plaintiff must show this

by a preponderance of the evidence.  *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

## C.     12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims.  *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail.  *Id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs.*, 220 F.3d at 178.

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127. S. Ct. 1955 (2007)).  Detailed factual allegations are not required.  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts.  *Id*.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).  As such, "[t]he touchstone of the pleading standard is plausability."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974, meaning enough

5

factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965 ). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. at 1950.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," and "legal arguments presented in memorandums or briefs and arguments of counsel." *Mayer*, 605 F.3d at 230; *Pryor*, 288 F.3d at 560. Additionally, the Court may consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.).

### III. Discussion

Plaintiff objects to the Magistrate Judge's findings on the following grounds: (1) 8 U.S.C. § 1252(g) does not bar him from pursing a remedy under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971); (2) his First Amendment retaliation claim is a proper *Bivens* claim; (3) his Fifth Amendment claims are proper *Bivens* claims; (4) he stated proper conspiracy claims against the ICE Defendants; (5) 8 U.S.C. § 1252(g) does not preclude his FTCA claims; (6) verbal confirmation of an administrative decision denying relief is sufficient to show exhaustion under the FTCA; (7) his FTCA claims premised on a theory of vicarious liability for the actions of PCCF officials are not barred as a matter of law; and (8) he stated a proper conspiracy claim under Pennsylvania law. (Doc. 85 at 1-6). In light of these objections, I will review the Report and Recommendation *de novo*.

### A. Tort Claims

Plaintiff's tort claims are best understood when sorted into two categories: (1) "pure" FTCA claims and (2) "mixed" FTCA and state law claims. Plaintiff's "pure" FTCA claims are leveled exclusively against the Federal Defendants and are comprised of Counts III,[5] IV, V, VI, and VII. *See* 28 U.S.C. § 1346(b)(1) (providing "exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government" under the FTCA). The following objections by Plaintiff concern the Magistrate Judge's findings on the "pure" FTCA claims: whether 8 U.S.C. § 1252(g) precludes Plaintiff's FTCA claims and whether he properly stated a claim for civil conspiracy under Pennsylvania law. (Doc. 85 at 5, 6).

Plaintiff's "mixed" FTCA and state law claims are comprised of Counts I and II. Each of these Counts contain two separate claims, one under the FTCA against the United States, the other under Pennsylvania state law against a combination of the PCCF Defendants in the alternative.[6] Plaintiff's objection asserting the independent contractor exception does not apply concerns the Magistrate Judge's findings on the "mixed" FTCA and state law claims.

Plaintiff's objection concerning whether verbal confirmation of a denial of administrative relief pertains to both the "pure" FTCA claims and the "mixed" FTCA and state law claims. I begin with this objection because it applies to all of Plaintiff's

---

[5]    Count III of the Complaint includes two separate claims against the United States, the first of which is a "pure" FTCA claim for civil conspiracy under the FTCA. The second claim is for civil conspiracy under Pennsylvania law and is discussed with Plaintiff's other conspiracy claims in Part B, *infra*. (Doc. 1 at 26).

[6]    For instance, Count I, a claim for intentional infliction of emotional distress, is captioned and structured as follows: "FTCA for a contractor to federal government, or alternatively, direct Pennsylvania Tort claim against individual defendants Frawley, Forshe, Martin and Wenzel [] DEFENDANT: UNITED STATES OF AMERICA, FRAWLEY, FORSHE, MARTIN AND WENZEL." (Doc. 1 at 27).

tort claims against the Federal Defendants, regardless of category.[7]

The FTCA contains a limited and conditional waiver of the federal government's sovereign immunity, which provides consent to suit in federal district court under certain conditions. *See* 28 U.S.C. § 1346(b); *United States v. Orleans*, 425 U.S. 807, 813, 96 S. Ct. 1971 (1976), *abrogated on other grounds by United States v. Olson*, 546 U.S. 43, 125 S. Ct. 510 (2005). Before filing a suit against the United States under the FTCA, a plaintiff must present an administrative claim to the responsible agency "and the claim shall have been finally denied by the agency in writing and sent by certified or registered mail." *See* 28 U.S.C. § 2675(a). "The final denial requirement is 'jurisdictional and cannot be waived.'" *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (quoting *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971)).

Plaintiff alleges he submitted a "Standard Form -95 (FTCA Major Claims) . . . to the counsel" and that his claims were denied. (Doc. 1 ¶¶ 19, 22). While Plaintiff offers additional information about his administrative claims in his brief in opposition to the Motion to Dismiss, he neither included them in any pleading nor offered supporting documentation. In his brief, Plaintiff explains he repeatedly reached out for updates on the status of his Standard Form 95 ("SF-95") filed on September 1, 2017. (Doc. 77 at 37-38). On December 11, 2017, Plaintiff spoke with "the office of

---

[7] "When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the Rule 12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter jurisdiction the accompanying defenses become moot and need not be addressed." *Turner v. United States*, Civ. No. 13-494, 2014 WL 1345011, at *2 (M.D.Pa. Apr. 4, 2014) (Mehalchick, M.J.) (citations omitted); *see also Tagayun v. Stolzenberg*, 239 F. App'x 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case.").

Defendant Kent"[8] and was informed his SF-95 was received and a denial letter was sent to his mailing address at PCCF. (*Id.* at 38). Plaintiff notified this individual that he no longer resided at PCCF, updated his mailing address, and was told the denial letter would be sent again, though Plaintiff has yet to receive it. (*Id.*).

Plaintiff bears the burden of showing he exhausted his FTCA claims. *See Lightfoot*, 564 F.3d at 627 ("[Plaintiff] bears the burden of demonstrating subject matter jurisdiction."). The Federal Defendants have offered signed declarations by Veena Reddy, Associate Legal Advisor for ICE's Office of Principal Legal Advisor, District Court Litigation Division, Kent J. Frederick, Chief Counsel for ICE's Philadelphia Office of Principal Legal Advisor, and Gail Jones, Paralegal Specialist for ICE's Philadelphia Office of Principal Legal Advisor. (*See* Doc. 82-1 *generally*). These declarations reflect neither Defendant Frederick nor his support staff recall receiving any phone calls or SF-95 from Plaintiff, and the Office of the Principal Legal Advisor was unable to find any record of Plaintiff's SF-95 in its database. (*Id.*). Plaintiff has not submitted any extrinsic proof either supporting his assertions that he submitted his SF-95 and that he learned his claim was denied by a staffer in Defendant Frederick's office or undermining the declarations submitted by the Federal Defendants.

Plaintiff argues even though he had not yet received the denial letter, he is not required to "hunt down his rejection letter" to satisfy the FTCA exhaustion requirement. (Doc. 85 at 5). Pursuant to 28 U.S.C. § 2675(a), "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section." While the statutory language suggests Plaintiff may not have to produce a final written denial to prove he exhausted his claim, he still must show when he filed his SF-95. However,

---

[8]     Plaintiff uses "Defendant Kent[,]" to refer to Defendant Kent Frederick in his Complaint and subsequent filings.

the documentation submitted by the Federal Defendants calls into question whether Plaintiff even filed an SF-95 at all. Weighed against the declarations submitted by the Federal Defendants, which reflect the agency had no record of any SF-95 submitted by Plaintiff, Plaintiff's statement in his brief that the claim was filed on September 1, 2017 is insufficient to satisfy his burden. Moreover, even if Plaintiff could show he filed his SF-95 on September 1, 2017, he filed the instant Complaint on January 5, 2018, less than six months later. *See* 28 U.S.C. § 2675(a). Accordingly, I find Plaintiff failed to exhaust his administrative remedies. Consequently, Counts III, IV, V, VI, and VII—Plaintiff's "pure" FTCA claims—will be dismissed without prejudice for lack of subject matter jurisdiction, as will the FTCA claims against the Federal Defendants in Plaintiff's "mixed" FTCA and state law claims of Counts I and II.[9]

**B.    Civil Rights**

Plaintiff asserts two types of civil rights claims: (1) conspiracy to violate civil rights and (2) constitutional torts under *Bivens*. Both categories are discussed below.

**1.    Conspiracy to Violate Civil Rights Claims**

**a.    Federal Conspiracy Claims**

Counts VIII, IX, and X of the Complaint contain Plaintiff's federal conspiracy to violate civil rights claims. Plaintiff objects to the Magistrate Judge's findings on these claims, arguing he properly stated claims against Defendants Madrigal and Posluszny under 42 U.S.C. §§ 1985(2), 1985(3), and 1986. (Doc. 85 at 4).

42 U.S.C. § 1985(2) prohibits two forms of conspiracy. The first part of the statute addresses conspiracies concerning "federal judicial proceedings" and the second part of the statute "applies to conspiracies to obstruct the course of justice in state courts." *Kush v. Rutledge*, 460 U.S. 719, 724-25, 103 S. Ct. 1483 (1983). To state a claim under either form of conspiracy, a plaintiff "must point to a federal or state

---

[9]    The state law claims in Counts I and II are outside of the scope of the Motion to Dismiss and will not be addressed for that reason.

proceeding with which the defendants have interfered." *Abumar v. Pennsylvania Dept'* *of Corr.*, No. 4:14-cv-01036, 2017 WL 2972825, at \*3 (M.D. Pa. July 12, 2017) (Brann, J.). Conspiracies under the second part of the statute require "the conspirators' actions in furtherance of their objective to have some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus' and be 'motivated by an intent to deprive their victims of the equal protection of the laws.'" *Id.* (first quoting *Griffin v.* *Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790 (1971), then quoting *Kush*, 460 U.S. at 725, 103 S.Ct. at 1483). Conspiracies under the first part of the statute, however, do not require "class-based animus." *Kush*, 460 U.S. at 726, 103 S. Ct. at 1488.

"[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) and injury to person or propertyor depirvation of any right or privilege of a citizen of the United States." *Lake* *v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *United Bhd. of Carpenters and* *Joiners of Am. Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352 (1983); *Griffin*, 403 U.S. at 102-03, 91 S. Ct. at 1798-99). To state a claim under 42 U.S.C. § 1986, a plaintiff must demonstrate: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994); *see also Lande v. City of Bethlehem*, 457 F. App'x 188, 193 (3d Cir. 2012) (noting that establishing a conspiracy under § 1985 is a prerequisite for a § 1986 violation).

Plaintiff alleges Defendants Madrigal and Posluszny "conspired to show plaintiff that they had the unilateral power to punish him, alongside or even above the courts of law" to "depriv[e] either directly or indirectly, plaintiff of equal protection of the laws, or of equal privileges and immunities under the laws." (Doc. 1 ¶¶ 34, 110, 114).

This allegation contains no factual information as to any actions undertaken in furtherance of the conspiracy. Indeed,

> "[t]o withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating the plaintiffs' rights, the time and place of these actions, and the people responsible therefor." Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy. [The plaintiff] must prove more than 'mere incantation of the words 'conspiracy' or 'acted in concert' to satisfy her Rule 8 pleading requirement."

*Tarapchak v. Lackawanna Cty.*, 173 F. Supp. 3d 57, 73 (M.D. Pa. 2016) (first quoting *DeJohn v. Temple Univ.*, No. 06-778, 2006 WL 2623275, at *5 (E.D. Pa. Sept. 11, 2006) (Dalzell, J.), then quoting *Loftus v. SEPTA*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) (Robreno, J.)). Additionally, "a plaintiff must allege when the agreement was made, the parties to the agreement, the object of the conspiracy, and the actions the alleged conspirators took in furtherance of that objective." *White v. Wireman*, No. 1:16-CV-675, 2017 WL 2215277, at *8 (M.D. Pa. May 19, 2017) (Caldwell, J.) (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009)).

Notwithstanding the lack of clarity as to the objective of the conspiracy,[10] nowhere in the Complaint does Plaintiff state when Defendants Madrigal and Posluszny made an agreement to "show plaintiff that they had the unilateral power to punish him, alongside or even above the courts of law." (Doc. 1 ¶ 34). Moreover, Plaintiff fails to state with sufficient particularity the actions undertaken by Defendants Madrigal and Posluszny in furtherance of the conspiracy, alleging only "[a]t each interaction Madrigal would state that his comments and decisions were '*Ok'ed*' by his superior Posluzny [*sic*]." (*Id.* (emphasis in original)). For these reasons, I find

---

[10] Without further clarification, it is unclear whether the objective of the alleged conspiracy was to actually "punish" Plaintiff, cause Plaintiff to fear punishment, or instead accept Defendants' power to punish him in a broader sense. In any of these scenarios, the term "punish," without more information, is far too vague to support an inference Defendants Madrigal and Posluszny had a meeting of the minds on this alleged objective. Indeed, the term "punish" could imply corporeal punishment, threats, or prolonged detention, *inter alia*.

Plaintiff failed to allege with sufficient particularity the underlying conspiracy necessary to support his claims under 42 U.S.C. §§ 1985(2), 1985(3), and 1986.

### b. Pennsylvania Conspiracy Claim

In addition to Plaintiff's federal conspiracy claims, Plaintiff alleges in Count III the United States[11] is liable for conspiracy to violate his civil rights under Pennsylvania law. Plaintiff objects to the Magistrate Judge's finding that he failed to state a civil conspiracy under Pennsylvania law.

To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by means of an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McKeeman v. Corestates Bank, N.A.*, 2000 Pa. Super. 117, 751 A.2d 655, 660 (2000) (citing *McGuire v. Shubert*, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998)). "In order for a claim of civil conspiracy to proceed, a plaintiff must allege the existence of all elements necessary to such a cause of action." *Lackner v. Glosser*, 2006 Pa. Super. 14, 892 A.2d 21, 34 (2006) (quoting *Rutherford v. Presbyterian-Univ. Hosp.*, 417 Pa. Super. 316, 612 A.3d 500, 508 (1992)). "Proof of malice, *i.e.*, an intent to injure, is an essential part of a conspiracy cause of action . . . [f]urthermore, a conspiracy is not actionable until 'some overt act is done in pursuance of a common purpose or design . . . and actual legal damage results.'" *Rutherford*, 417 Pa. Super. at 333, 612 A.2d at 508 (quoting *Baker v. Rangos*, 229 Pa. Super. 333, 324 A.2d 498, 506 (1974) (citations omitted)).

Plaintiff's state law conspiracy claim is based on the same alleged conspiracy as his federal claims. Even if Plaintiff could satisfy the three *McKeeman* elements of

---

[11]     Plaintiff lists the United States as the defendant in Count III but refers to the conduct of the "Conspiracy Defendants[,]" Madrigal and Posluszny as the basis of the conspiracy allegation, thereby implying this Count is actually against Defendants Madrigal and Posluszny.

a conspiracy—which, for the reasons discussed above, he cannot—the lack of clarity in the alleged objective of the conspiracy would still be fatal to his state law conspiracy claim, as it is unclear what, if any, civil cause of action would underlie the alleged conspiracy by Defendants Madrigal and Posluszny. Plaintiff has therefore failed to state a claim for civil conspiracy under Pennsylvania law as well. Accordingly, Counts III, VIII, IX, and X will be dismised.

### 2. *Bivens* Claims

A *Bivens* claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992) (Conaboy, C.J.). To state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

Counts XII, XIV, XVI, XVIII, XIX, XX, and XXI of the Complaint contain Plaintiff's *Bivens* claims. Plaintiff objects to the Magistrate Judge's findings on these claims on the following grounds: (1) 8 U.S.C. § 1252(g) does not prohibit recovery under *Bivens*; (2) his First Amendment retaliation claim may proceed under *Bivens*; and (3) his Fifth Amendment claims for deliberate indifference to medical needs, failure to protect, equal protection, and state created danger may also proceed under *Bivens*. (Doc. 85 at 1-4).

### a. Subject Matter Jurisdiction – 8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) provides "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" The Supreme Court held this jurisdictional limitation "applies only to three discrete actions that the Attorney General may take[:]" (1) commencing proceedings, (2) adjudicating cases, or (3) executing removal orders.

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S. Ct 936 (1999).

Plaintiff challenges the Magistrate Judge's finding that 8 U.S.C. § 1252(g) "may bar *Bivens* claims arising out of the commencement, litigation and enforcement of removal orders." (Doc. 83 at 18).[12]  Plaintiff's claims in Counts XVIII, XIX, XX, and XXI challenge DHS's execution of his removal order, specifically, the length of his post-final order of removal detention, and therefore fall within the scope of  8 U.S.C. § 1252(g).  *See Adegbuji v. Fifteen Immigration and Customs Enf't Agents*, 169 F. App'x 733, 735 (3d Cir. 2006) (noting § 1252(g) "bar[s] judicial review of all of Adegbuji's *Bivens* and § 1985(3) claims for damages . . . arising from or relating to the implementation of or operation of an order of removal"); *Ynfante v. United States*, No. 3:13-cv-767, 2015 WL 631055, at*3 (M.D. Pa. Feb. 12, 2015) (Munley, J.) ("[S]ection 1252(g) precludes federal courts' subject matter jurisdiction over **any** claim when the Attorney General's decision or action to [execute a removal order] is the *basis of the claim*[.]") (emphasis added).

Specifically, Count XVIII: First Amendment retaliation, challenges the motivations of Defendants Madrigal and Posluszny in "extending plaintiff's detention by four months[.]"  (Doc. 1 ¶ 160).  Count XIX: Fifth Amendment equal protection, alleges Defendants Madrigal and Posluszny elected to extend Plaintiff's detention on the basis of Plaintiff's national origin. (*Id.* ¶¶ 166-69).  Count XX: Fifth Amendment procedural due process, challenges the four (4) month extension of Plaintiff's detention by Defendants Madrigal and Posluszny.  (*Id.* ¶ 173).  Lastly, Count XXI: Fifth Amendment substantive due process, alleges Defendants Madrigal and Posluszny decided to extend Plaintiff's detention despite their awareness of alleged harm done to

---

[12]     The Magistrate Judge ultimately declined to base his recommendation to dismiss Plaintiff's *Bivens* claim on this statute.  The Federal Defendants request I review the Magistrate Judge's finding *de novo* to determine whether subject matter jurisdiction exists over Plaintiff's *Bivens* claims.

him by PCCF officers. (*Id.* ¶¶ 177, 178). Despite raising issues about the Federal Defendants' motivations for detaining Plaintiff, at their core, these claims challenge the length of Plaintiff's detention and therefore fall within the § 1252(g) category of the Attorney General's decision or actions concerning execution of a removal order.

The DHS acted within its authority by attempting to remove Plaintiff upon securing an administratively final removal order. Plaintiff's immigration detention commenced in January of 2017 and continued until December 5, 2017. (*Id.* ¶¶ 25, 33). During this time, an IJ ordered Plaintiff removable on May 3, 2017 and his subsequent appeal to the BIA was dismissed on September 6, 2017. (*Id.* ¶ 26). Plaintiff argues his removal order became final on May 3, 2017 because he did not appeal the IJ's decision that he was entitled to relief under the Convention Against Torture, and alleges his continued detention by the DHS until December 5, 2017 was unconstitutional.[13] However, Plaintiff's order of removal was "final" under 8 C.F.R. § 1241.1(a) on September 6, 2017.[14] Plaintiff's ninety (90) day detention following his final order of

---

[13]    The Third Circuit recently discussed the post-removal order detention statute at issue in this case, 8 U.S.C. § 1231(a), in light of the Supreme Court's decision in *Zadvydas v. Davis*, which held post-removal detention is presumptively reasonable for up to six months, at which point continued detention is no longer reasonable if removal is not "reasonably foreseeable." 533 U.S. 678, 699, 703, 121 S.Ct. 2503 (2001). In *Guerrero-Sanchez v. Warden York Cty. Prison,* the Third Circuit invoked the canon of constitutional avoidance to find that the construction of 8 U.S.C. § 1231(a)(6) entitles an alien facing detention beyond the six-month period to be released on bond unless the government establishes by clear and convincing evidence that the alien poses a flight risk or danger to the community. 905 F.3d 208, 226 (3d Cir. 2018). Accordingly, under 8 U.S.C. § 1231(a), the government may detain an alien subject to a final order of removal who is in the process of withholding only proceedings and whose removal is not imminent for six months before a bond hearing is necessitated. *Id.* However, after six months of detention, the government must afford that individual a bond hearing at which the government bears the burden of justifying ongoing detention by clear and convincing evidence. *Id.* at 222 n.11.

[14]    The Magistrate Judge correctly notes that Plaintiff was properly detained from January of 2017 until his removal order became administratively final on

removal was statutorily mandated under 8 U.S.C. § 1231(a), as such, his release on December 5, 2017—exactly ninety after September 6, 2017—was not unlawfully prolonged.  My review of Plaintiff's claims against any Federal Defendants in Counts XVIII, XIX, XX, and XXI against is therefore precluded by 8 U.S.C. § 1252(g).

### b.    Rule 12(b)(6) Failure to State a Claim

Plaintiff's remaining *Bivens* claims in Counts XII, XIV, and XVI are based on the allegedly inhumane treatment and conditions during Plaintiff's confinement rather than one of the three § 1252(g) actions, therefore they are not barred by the statute.  *See Jennings v. Rodriguez*, 583 U.S. —, 138 S. Ct. 830, 855 (2018) (Alito, J., plurality opinion) (concluding the judicial review bar in 8 U.S.C. § 1252(b)(9), which was addressed throughout the opinion as a parallel provision to § 1252(g), "says nothing about whether it also covers claims about inhumane treatment, assaults, or negligently inflicted injuries suffered *during* detention (actions that go beyond the Government's lawful pursuit of its removal objective)"); *Ynfante*, 2015 WL 631055, at *4-*7 (addressing plaintiff's *Bivens* claims based on "an injury allegedly sustained" while in detention separately from the *Bivens* claims based on commencing removal proceedings that were barred under §1252(g)).

An inmate challenging the conditions of his confinement in a *Bivens* claim who has not yet been sentenced must turn to the Fifth Amendment Due Process Clause for protection.  *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861 (1979); *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012); *Fuentes v. Wagner*, 206 F.3d 335, 431-43 (3d Cir. 2000).  Immigration detainees are entitled to the same constitutional protections as pretrial detainees.  *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011) (per curiam).  Plaintiff challenges the Magistrate Judge's recommendation to dismiss his Fifth Amendment deliberate indifference to medical needs, failure to protect, and state created danger claims for failure to state a claim under Rule 12(b)(6).  For the reasons

---

September 6, 2017 under 8 U.S.C. § 1226(c).  (Doc. 83 at 14).

below, I find the Magistrate Judge correctly concluded Plaintiff failed to state claims under the Fifth Amendment.

### i. Count XII: Deliberate Indifference to Medical Needs

To establish a claim based on deliberate indifference to a medical need, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Id.* at 857, 114 S.Ct. at 1989.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Id.* Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir, 1990). Mere misdiagnosis or negligent treatment is not an actionable claim under this standard because medical malpractice is not a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 295 (1976). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is "disavow[ed]" by courts since such determinations remain a question of sound professional judgment. *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Here, Plaintiff's claim is based on the ICE Defendants' failure to replace the Hepatitis-C-positive inmate who was in charge of Plaintiff's food, despite being notified of the potential health risk. (Doc. 1 ¶ 126). Plaintiff alleges this inmate "was an old man who would drool (salivate) over the food trays while he handled them" and that he wrote to the ICE defendants to let them know about his concerns but did not receive a response  (*Id.* ¶¶ 41, 43).  While Plaintiff asserts he "lived under immense fear" of contracting Hepatitis-C and he "could not consume adequate amount of food, his blood pressure and heart rate were exponentially increased and he could not sleep due to extreme stress and anxiety[,]" he failed to allege he specifically notified the ICE Defendants of these concerns or even whether he sought medical treatment at the prison. (*Id.* ¶ 46).[15]  Plaintiff admits that upon his released from detention, he learned he "scraped by Hepatitis-C free."  (*Id.*)

Additionally, Plaintiff alleges the ICE Defendants' involvement in his medical treatment amounts to their failure to respond to his written notification of potential exposure to Hepatitis C.  (*Id.* ¶ 43).  This is insufficient to sustain a claim of deliberate indifference to medical needs.  *See Washington v. Showalter*, 494 F. App'x 268, 272 (3d Cir. 2012) ("[Defendants'] involvement in the grievance review, without more, is insufficient to maintain a claim that they exhibited deliberate indifference to [plaintiff's] medical needs."); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the [] scienter requirement of deliberate indifference.").

---

[15]    In one of the exhibits submitted in support of his Complaint, Plaintiff notes he "sought treatment for Hepatitis-C."  (Doc. 5 at 11).  It is unclear whether Plaintiff actually presented to the medical staff for treatment of Hepatitis-C or his mental health concerns, or whether Plaintiff received medical treatment and merely disagreed with the medical opinions he received.  (*See* Doc. 5 at 11 ("I contacted sergeants Frawley, Forashe, and Martin and begged for help further.  I pursued numerous medical sick calls and grievances.  These individuals ignored all.")).

Accordingly, Plaintiff failed to state a Fifth Amendment claim for deliberate indifference to his medical needs in Count XII.

### ii. Counts XIV, XVI: Failure to Protect, State Created Danger

Counts XIV and XVI of the Complaint will be addressed together as they are premised on the same legal theory: *respondeat superior* liability based on the alleged conduct of the PCCF Defendants as independent contractors. (Doc. 1 ¶¶ 143, 150). Specifically, Plaintiff argues he can raise a *Bivens* claim against the ICE Defendants because they "had primary custody over [him]" in detention and were therefore responsible for the conduct of the PCCF officers. (*Id.* ¶¶ 135, 147).

The Supreme Court has unequivocally stated "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S. Ct. at 1948 (citations omitted); *see also Bistrian*, 696 F.3d at 366; *Argueta v. United States Immigration and Customs Enf't*, 643 F.3d 60,71 (3d Cir. 2011). Plaintiff's *Bivens* claims, to the extent they are based solely on a theory of *respondeat superior*, therefore fail as a matter of law.

Plaintiff also argues the ICE Defendants were personally involved in violating his constitutional rights because they were "on notice that their contractors at PCCF were hell-bent to harm plaintiff. But they did not care, they looked the other way." (*Id.*). However, the facts as plead by Plaintiff himself reflect he reported an incident involving cell mates trying to fight him to "DHS/ICE officials" after the fact. (*Id.* ¶ 53). In the same notice, dated September 5, 2017, Plaintiff also mentioned PCCF Defendant Frawley switched his diet from "meat-free" to a "meaty" diet. (Doc. 5 at 17-18). This notice was directed to only two of the ICE Defendants, Defendants Posluszny and Frederick. (*Id.*). On September 20, 2017, Plaintiff reported an alleged

theft, strip search, attempted murder, and forgery; each of these alleged events also occurred *before* Plaintiff wrote to Defendants Posluszny and Frederick. (*Id.* Doc. 20-23). These facts do not reflect the ICE Defendants failed to act to protect Plaintiff after receiving notice that he was at risk of harm; rather, these facts show Plaintiff reported the alleged harm he suffered after the fact. Plaintiff is therefore unable to show the ICE Defendants acted with deliberate indifference,[16] as required for his failure to protect claim, or that any of the ICE Defendants "acted with a degree of culpability that shocks the conscience[,]" "affirmatively used [their] authority in a way that created a danger to [Plaintiff][,]" and "'the harm ultimately caused was foreseeable and direct'" as required for his state created danger claim. *Bright v. Westmoreland Cty.*, 443 F.3d 276, 282 (3d Cir. 2006) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996); *see also Paluch v. Sec'y Pa. Dep't Corr.*, 442 F. App'x 690, 695 (3d Cir. 2011) ("[T]here is no apparent obligation for pirosn officials to investigate prison grievances.") (citing *Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382 (2d Cir. 1973). As such, Plaintiff failed to state *Bivens* claims for failure to protect and state created danger under the Fifth Amendment and his *Bivens* claims in Counts XII, XIV, and XVI will be dismissed.

## IV. Conclusion

For the above stated reasons, the Magistrate Judge's Report and Recommendation will be adopted. Counts III (FTCA - Civil Conspiracy), IV, V, VI,

---

[16]     "Deliberate indifference" is a subjective standard in that "the prison official-defendant must have actually known or been aware of the excessive risk to inmate safety." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). A plaintiff must show that the defendant was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it. *See, e.g, Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

VII, XVIII, and XX of the Complaint will be dismissed without prejudice for lack of subject matter jurisdiction. The FTCA claims against the United States in Counts I and II will also be dismissed without prejudice for lack of subject matter jurisdiction, as will the *Bivens* claims against Defendants Madrigal and Posluszny in Counts XIX and XXI. Counts III (Civil Conspiracy - Pennsylvania law), VIII, IX, and X, will be dismissed with prejudice for failure to state a claim. The *Bivens* claims against Defendants Madrigal and Posluszny in Counts XII, XIV, and XVI will also be dismissed with prejudice for failure to state a claim.

An appropriate order follows.

April 9, 2019                                          /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                               United States District Judge